IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2014-NMSC-001

Filing Date: December 2, 2013

Docket No. 33,763

STATE OF NEW MEXICO,

      Plaintiff-Petitioner,

v.

DANIEL ALMANZAR,

      Defendant-Respondent.

ORIGINAL PROCEEDING ON CERTIORARI
Neil C. Candelaria, District Judge

Gary K. King, Attorney General
Nicole Beder, Assistant Attorney General
Santa Fe, NM

for Petitioner

Jorge A. Alvarado, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Respondent

OPINION

VIGIL, Justice.

{1}     In this case we address whether the phrase "at the scene" in NMSA 1978, Section 31-1-7(A) (1995) authorizes law enforcement officers to make a warrantless arrest for domestic violence beyond the precise geographic location where the disturbance occurred. In this case, Daniel Almanzar ("Defendant") was arrested without a warrant across the street from where he allegedly battered his girlfriend ("Victim"). When the police searched Defendant pursuant to his arrest, they found a golf-ball-sized mass of cocaine in his pants pocket. He was subsequently charged with a drug trafficking offense. Defendant moved to suppress the

1

cocaine on the basis that the arrest was unlawful because he was not arrested "at the scene" as required under Section 31-1-7(A). The district court denied his motion, concluding that the warrantless arrest was lawful because Defendant was arrested in close proximity to where the actual incident took place.

**{2}** The Court of Appeals reversed the district court and held that the warrantless arrest was not lawfully made because Section 31-1-7(A) specifically limits the authority of law enforcement officers to make an arrest for domestic battery, a misdemeanor, where the incident took place. We disagree with this analysis. Our interpretation of the Legislature's intent in creating the statutory warrantless arrest exception in Section 31-1-7(A) leads us to conclude that Defendant's arrest was lawful because it was reasonably close in proximity to where the domestic violence took place.

## I.  BACKGROUND

**{3}** On December 1, 2007, Defendant and Victim were in the parking lot at Tingley Coliseum on the New Mexico State Fair grounds in Albuquerque. Defendant and Victim began quarreling, and he allegedly kicked Victim. After the incident, Victim left the fairgrounds and walked to a Walgreens drug store across the street on the corner of Central Avenue and San Pedro Drive, where she called 911. Defendant also left the fairgrounds, but he walked to a Circle K convenience store across the street on the corner of Central Avenue and Louisiana Boulevard. The Albuquerque Police Department dispatched officers to both locations in response to the 911 call.

**{4}** The officers identified Defendant when they arrived at the Circle K. As the officers approached Defendant, he put his hands in his pockets and refused to remove them after being asked to do so. The officers escorted Defendant out of the store, handcuffed him, and performed a pat-down search. The officer who performed the search felt a hard object in Defendant's pocket and removed a golf-ball-sized mass of cocaine. The officers then put Defendant in the back of a squad car and drove him to the Walgreens where Victim was located.

**{5}** When they arrived at Walgreens, Victim identified Defendant as the person who had battered her. Once Victim identified Defendant, one of the arresting officers made the initial determination that Defendant would be charged with domestic violence and taken in for booking. However, Defendant was not charged with the domestic violence offense, but instead was charged with and indicted on one count of trafficking a controlled substance in contravention of NMSA 1978, Section 30-31-20 (2006).

**{6}** Before trial, Defendant moved to suppress the cocaine evidence. He argued that the search amounted to an illegal pat-down and that it was unlawful because, pursuant to Section 31-1-7(A), the police had no authority to arrest him away from where the incident took place without a warrant. The district court denied Defendant's motion to suppress the physical evidence, concluding that the pat-down was lawful and that the arrest was lawful because

2

"it was in the general vicinity, certainly in [the] area," of the scene.

**{7}** The Court of Appeals reversed the district court on both grounds. *State v. Almanzar*, 2012-NMCA-111, ¶ 1, 288 P.3d 238. First, it held that the officer who performed the pat-down exceed his authority by removing the cocaine from Defendant's pocket because the cocaine did not appear to be a weapon. *Id*. Second, the Court of Appeals held that Defendant's arrest was unlawful because the officers did not make the arrest at the precise location of the alleged battery. *Id*. Accordingly, it held that the cocaine should have been suppressed. *Id*.

**{8}** The State now asks this Court to address the lawfulness of Defendant's arrest and reverse the Court of Appeals on this single issue. It argues that the "at the scene" language in Section 31-1-7(A) was satisfied because the arrest was made within minutes of the alleged battery, and the arrest was made across the street from the reported incident. For the reasons that follow, we conclude that the warrantless arrest was lawful. Therefore, we reverse the Court of Appeals and affirm the district court's denial of Defendant's motion to suppress.

## II.    DISCUSSION

### A.    Standard of Review

**{9}** The district court's denial of Defendant's motion to suppress evidence presents a mixed question of fact and law. *See State v. Williams*, 2011-NMSC-026, ¶ 8, 149 N.M. 729, 255 P.3d 307. This Court reviews factual matters with deference to the district court's findings if substantial evidence exists to support them, and it reviews the district court's application of the law de novo. *Id*. Further, since Defendant's appeal centers on our interpretation of Section 31-1-7(A), this Court interprets that statute de novo. *See Moongate Water Co. v. City of Las Cruces*, 2013-NMSC-018, ¶ 6, 302 P.3d 405 ("Statutory interpretation is an issue of law that we review de novo.").

### B.    The Warrantless Arrest Was Lawful Under Section 31-1-7(A) Because It Was Made in Close Proximity to Where the Incident Took Place

**{10}** The central issue is whether Defendant was lawfully arrested without a warrant for domestic violence when the arrest took place across the street from where the alleged incident occurred. If Defendant's arrest was lawful, then the search incident to the arrest falls within the exception to the constitutional search warrant requirement. *See* N.M. Const. art. II, § 10 ("The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures."); U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."); *State v. Rowell*, 2008-NMSC-041, ¶ 13, 144 N.M. 371, 188 P.3d 95 ("One of the most firmly established exceptions to the warrant requirement is "the right on the part of the government, always recognized under English and American law, to search the person of the accused when legally arrested." (internal quotation marks and

citation omitted)). We hold that because Defendant's warrantless arrest was made within close proximity to the alleged incident, it was lawful under Section 31-1-7(A). Therefore, as the district court ruled, the cocaine was found pursuant to a search incident to a lawful arrest, and Defendant's motion to suppress was properly denied.

**{11}**     We begin our analysis by noting the constitutional limitations on the government's authority to make an arrest without a warrant and search incident thereto. Article II, Section 10 of the New Mexico Constitution provides that "[t]he people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures." The Fourth Amendment to the United States Constitution also provides this guarantee. "Warrantless [searches and] seizures are presumed to be unreasonable." *Williams*, 2011-NMSC-026, ¶ 8 (internal quotation marks and citation omitted). While our state constitution and its federal counterpart impose a warrant requirement to ensure that searches and seizures are reasonable, "our courts have historically recognized that it is not always reasonable to require a warrant and have developed a number of well-established exceptions to the warrant requirement." *Rowell*, 2008-NMSC-041, ¶ 11.

**{12}**     One such exception is "the right on the part of the government, always recognized under English and American law, to search the person of the accused when legally arrested." *Id*. ¶ 13 (internal quotation marks and citation omitted). Warrantless searches "have been considered reasonable because of the practical need to prevent the arrestee from destroying evidence or obtaining access to weapons or instruments of escape, without any requirement of specific probable cause to believe weapons or evidence are present in a particular situation." *Id*. Thus, our inquiry is whether Defendant was lawfully arrested so that the officer's search of his person falls within this exception.

**{13}**     In order to lawfully arrest an individual for a misdemeanor, a police officer must have a warrant, unless the misdemeanor was committed in the officer's presence. *See City of Las Cruces v. Sanchez*, 2009-NMSC-026, ¶ 11, 146 N.M. 315, 210 P.3d 212 ("[I]n New Mexico, an officer may execute a warrantless misdemeanor arrest only if the offense was committed in the officer's presence."). Section 31-1-7(A) creates an exception to this general rule for misdemeanor domestic disturbances, such as the one reported here, by providing that:

> Notwithstanding the provisions of any other law to the contrary, a peace officer may arrest a person and take that person into custody without a warrant when the officer is at the scene of a domestic disturbance and has probable cause to believe that the person has committed an assault or a battery upon a household member.

There is no dispute that the officers had probable cause in this case; rather, the dispute centers on whether the officers were "at the scene" of the disturbance when they made the warrantless arrest. Our task, therefore, is to determine what the Legislature intended by using the phrase "at the scene" in Section 31-1-7(A).

4

**{14}** In interpreting statutory language, "[o]ur main goal . . . is to give effect to the Legislature's intent." *State v. Hall*, 2013-NMSC-001, ¶ 9, 294 P.3d 1235. To discern the Legislature's intent, the Court "look[s] first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Marbob Energy Corp. v. N.M. Oil Conservation Comm'n*, 2009-NMSC-013, ¶ 9, 146 N.M. 24, 206 P.3d 135 (internal quotation marks and citation omitted). "Where the language of a statute is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *Diamond v. Diamond*, 2012-NMSC-022, ¶ 25, 283 P.3d 260 (internal quotation marks and citations omitted).

**{15}** If the relevant statutory language is unclear, ambiguous, or reasonably subject to multiple interpretations, then the Court should proceed with further statutory analysis. *See State v. Smith*, 2004-NMSC-032, ¶ 9, 136 N.M. 372, 98 P.3d 1022. ("[W]e exercise caution in applying the plain meaning rule. Its beguiling simplicity may mask a host of reasons why a statute, apparently clear and unambiguous on its face, may for one reason or another give rise to legitimate (i.e., nonfrivolous) differences of opinion concerning the statute's meaning." (internal quotation marks and citation omitted)). We reject a "mechanical statutory construction when the results would be absurd, unreasonable, or contrary to the spirit of the statute." *Id*. ¶ 10. When interpreting a statute, we are also informed by the history, background, and overall structure of the statute, as well as its "function within a comprehensive legislative scheme." *State v. Rivera*, 2004-NMSC-001, ¶ 13, 134 N.M. 768, 82 P.3d 939.

**{16}** The authority to make an arrest without a warrant for a domestic dispute is contained in Section 31-1-7(A), which has two requirements. The arresting officer must be at the scene of the domestic disturbance, and the officer must have probable cause to believe the arrestee has committed a domestic assault or battery. Whether the officer had probable cause to arrest Defendant is not at issue. We are called upon to address only the first element of Section 31-1-7(A) in this case. Defendant asserts, and the Court of Appeals agreed, that the phrase "at the scene" should be read literally to mean that the arresting officer must make the arrest where the domestic disturbance occurred. The State argues, and the district court agreed, that the phrase should be interpreted to mean that the police officer may make an arrest anywhere near in space and time from where and when the incident occurred. Under the facts of this particular case, we agree with the latter interpretation.

**{17}** Defendant's plain language reading of the statute appears to be that "at the scene" means at the precise place where the domestic violence occurred. The Court of Appeals agreed with this narrow interpretation and held that the ordinary meaning of the word scene is "'the place of occurrence or action.'" *Almanzar*, 2012-NMCA-111, ¶ 25 (quoting *Webster's Third New International Dictionary* 2028 (unabridged ed. 2002)). Defendant's interpretation of the phrase "at the scene" uses synonyms such as "place," "location," or "the place of occurrence or action" which we consider unhelpful because these terms fail to render the statute workable. At oral argument, defense counsel argued that "at the scene" could be defined to be the same physical address or the same ownership or occupancy unit,

5

however, when pressed by the Court, as to whether that meant the fairgrounds was one "scene," while crossing the street to call the police took you to a different "scene," defense counsel responded that for large areas it should mean "within sight." This interpretation is unworkable, and it became obvious with the follow up question of whether stepping behind a visual obstruction removed one from the "scene," and thereby from the reach of the law.

{18}    The State argues that due to the volatile and dangerous nature of domestic disturbances, "at the scene" must be read broadly to enable an officer to make a warrantless arrest within a reasonable time and distance of the incident. The State further asserts that a narrow reading of the statute would lead to absurd results, such as preventing an officer from making an arrest if a victim were forced to cross the street from the incident to call the police and her abuser followed her. Instead, the State argues that the Legislature has recognized the severity of domestic violence, and has created the warrantless arrest exception to combat the gravity of domestic violence situations. In our opinion, the difference in each side's interpretation of the phrase "at the scene" illustrates the beguiling simplicity with which the plain meaning rule can literally mask the statute's true intention. We agree with the State, however, because its interpretation conforms with precisely what we consider to be the Legislature's intent in creating the warrantless arrest exception.

{19}    The Family Violence Protection Act ("the Act"), NMSA 1978, §§ 40-13-1 to -12 (1987, as amended through 2013) illuminates our inquiry into the Legislature's intent. When Section 31-1-7(A) is viewed in light of the Act, the Legislature's intent is clarified. *See Baker v. Hedstrom*, 2013-NMSC-043, ¶ 26, 309 P.3d 1047 ("[A]ll provisions of a statute, together with other statutes in pari materia, must be read together to ascertain the legislative intent."). For instance, the Act states that "[a] local law enforcement officer responding to the request for assistance shall be required to take whatever steps are reasonably necessary to protect the victim from further domestic abuse." Section 40-13-7(B). It then goes on to list several measures that an officer may take to ensure victim safety, such as: advising of the remedies available to the victim under the Act; informing the victim about the availability of shelter, counseling, or medical care; transporting the victim to a medical facility or shelter; accompanying the victim to the victim's residence to obtain clothing and personal effects; helping the victim possess a dwelling or enforcing an order of protection; arresting the alleged perpetrator; and, advising about the right to initiate criminal proceedings. *Id*.

{20}    These measures reflect that the Legislature's first priority in addressing domestic disturbances is ensuring a victim's safety. With this clear purpose in mind, we conclude that Section 31-1-7(A) was enacted to enable an officer to ensure a victim's safety by allowing the officer to arrest an aggressor who is still at the scene of the incident without a warrant. Thus, the test for whether an officer was "at the scene" for purposes of the statute is one of reasonableness. The police must make the warrantless arrest reasonably close to the scene both spatially and temporally. We infer that the Legislature used the language "at the scene" to strike a reasonable balance between preventing harm to the victim and protecting the rights of the accused. If the police arrive at the scene of a domestic disturbance within a

reasonable time after the violence is alleged to have occurred, such that the evidence of the violence is still fresh, and if the aggressor is still physically close enough to the victim to be able to reinitiate violence, then Section 31-1-7(A) empowers law enforcement to incapacitate the aggressor and protect the victim by making a warrantless arrest.

{21}     Section 31-1-7(A) gives law enforcement officers an effective tool with which to ensure a victim's safety and to diffuse what is often a dangerous situation. A rigid, geography-based interpretation of Section 31-1-7(A) conflicts with these express purposes. To read the language "at the scene" of Section 31-1-7(A) as restricting the officer's ability to arrest Defendant across the street from, and within minutes of, the domestic disturbance would be contrary to the Legislature's intent. Had this incident occurred at the home shared by Victim and Defendant, it would be unreasonable if the police could not arrest Defendant without a warrant simply because he crossed the street or went to a neighbor's home. Similarly, in this case it would contravene the Legislature's intent to interpret the statute as requiring the officers in this situation to arrest Defendant in the parking lot of Tingley Coliseum, rather than where Defendant was located across the street. Such a rigid interpretation of the statute would defeat the purpose of the warrantless arrest exception.

{22}     In this case, we interpret "at the scene," as used in Section 31-1-7(A), to authorize law enforcement officers to make a warrantless arrest within minutes of the incident, at a location directly across the street from the incident. This interpretation is consistent with the Legislature's intent and the purpose of Section 31-1-7(A). The record reflects that the police responded to the convenience store within minutes of the 911 call, and the store was situated directly across the street from where the alleged physical altercation took place. Under these circumstances, we conclude that because the officers made the arrest within minutes and within close proximity to the alleged disturbance, the officers were "at the scene" at the time of the arrest. Therefore, we hold that the arrest was lawful under Section 31-1-7(A).

## III.     CONCLUSION

{23}     We hold that the warrantless arrest of Defendant was lawful and valid under Section 31-1-7(A), and because Defendant was lawfully arrested, the officer's search of Defendant incident to that arrest was valid. Accordingly, we reverse the Court of Appeals and affirm the district court's denial of Defendant's motion to suppress.

{24}     **IT IS SO ORDERED.**


_____

**BARABARA J. VIGIL, Justice**


**WE CONCUR:**


_____

7

**PETRA JIMENEZ MAES, Chief Justice**

_____

**RICHARD C. BOSSON, Justice**

_____

**EDWARD L. CHÁVEZ, Justice**

_____

**CHARLES W. DANIELS, Justice**

**Topic Index for** _State v. Almanzar_**, No. 33,763**

**APPEAL AND ERROR**
Standard of Review

**CRIMINAL LAW**
Battery
Controlled Substances
Domestic Violence
Misdemeanor

**CRIMINAL PROCEDURE**
Motion to Suppress
Warrantless Arrest
Warrantless Search

**STATUTES**
Interpretation
Legislative Intent