# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>February 2, 2015</u>

**NO. 33,362**

**LEE EINER,**

      Petitioner-Appellant,

v.

**MELANIE Y. RIVERA,**
**in her official capacity as**
**Clerk of San Miguel County,**

      Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SAN MIGUEL COUNTY**
**Abigail Aragon, District Judge**

Brannen Law LLC
Daniel E. Brannen Jr.
Santa Fe, NM

for Appellant

Jesus L. Lopez, San Miguel County Attorney
Las Vegas, NM

for Appellee

# OPINION

**WECHSLER, Judge.**

{1} We consider in this appeal whether San Miguel County is subject to the home rule charter process of the Home Rule Amendment, Article X, Section 6 of the New Mexico Constitution, and the Municipal Charter Act, NMSA 1978, §§ 3-15-1 to -16 (1965, as amended through 1990). We hold that it is not, concluding that San Miguel County is not a "municipality" within the Municipal Charter Act or the Home Rule Amendment. We further conclude that our holding does not violate the constitutional equal protection rights of Petitioner Lee Einer. We affirm the district court's denial of a petition for mandamus.

## BACKGROUND

{2} The attorneys for Petitioner, a resident of San Miguel County, submitted a form petition to Respondent Melanie Y. Rivera, the County Clerk, requesting that Respondent approve the form of the petition for circulation to qualified electors. The petition requested the San Miguel County Commission to appoint a charter commission providing for the "home rule" government of the county. NMSA 1978, Section 3-1-5 (2007) provides the procedure for approval of the form of a municipal home rule petition that includes approval by a county clerk if the form meets specified statutory requirements. Section 3-1-5(C).

{3} The San Miguel County attorney responded to the request, advising that Respondent declined to act on the petition because the petition seeking incorporation of the county and adoption of a charter was not authorized by law. After an additional exchange of letters between counsel, Petitioner filed a writ of mandamus, requesting that the district court issue (1) a declaratory judgment that San Miguel County is a "municipality" under the Municipal Charter Act and that the form of petition met the requirements of Section 3-1-5(C); and (2) a peremptory or alternative writ of mandamus, compelling Respondent to approve the petition.

{4} The parties filed stipulated findings of fact and proposed conclusions of law and cross-motions for summary judgment. The district court denied Petitioner's motion, granted Respondent's motion, and denied the petition for a writ. It stated that San Miguel County was "not a municipality as contemplated in the Municipal Code and Municipal Charter Act."

{5} On appeal, Petitioner argues, as he did in the district court, that (1) San Miguel County is a municipality with authority to adopt a home rule charter under the Municipal Charter Act; (2) San Miguel County is a municipality with authority to adopt a home rule charter under the Home Rule Amendment; and (3) if San Miguel County is not recognized as a municipality under the Municipal Charter Act and the Home Rule Amendment, his right to local self-government would be infringed in

violation of the Equal Protection Clause of the Fourth Amendment of the United States Constitution and Article II, Section 18 of the New Mexico Constitution.

**MUNICIPAL CHARTER ACT**

{6} The Home Rule Amendment was adopted in 1970. It permits the qualified electors of a municipality to adopt "in the manner provided by law" a charter for the exercise of legislative powers. N.M. Const. art. X, § 6(C), (D). The Legislature adopted the Municipal Charter Act the following year, providing the manner by which the Home Rule Amendment was to be carried out. *See, e.g.*, § 3-15-2 ("The qualified electors of a municipality who wish to be governed pursuant to Article 10, Section 6 of the constitution of New Mexico may adopt, amend or repeal a charter pursuant to the Municipal Charter Act.").

{7} The Municipal Charter Act permits the qualified electors of a municipality to petition for the adoption of a home rule charter. Section 3-15-4. It defines a "municipality" to mean "any incorporated city, town, village or county, whether incorporated under general act, special act or constitutional provision." Section 3-15-3. Petitioner's argument that the Municipal Charter Act provides San Miguel County with the authority to adopt a home rule charter hinges on this definition. Specifically, in order for Petitioner to be entitled to petition for a home rule charter, San Miguel County must be an incorporated county, "incorporated under general act,

special act or constitutional provision." *Id.* As a matter of statutory interpretation, we address Petitioner's argument on appeal under de novo review. *State v. Almanzar*, 2014-NMSC-001, ¶ 15, 316 P.3d 183. We interpret the Municipal Charter Act in order to fulfill its legislative intent. *Griego v. Oliver*, 2014-NMSC-003, ¶ 20, 316 P.3d 865. In doing so, we first look to the language of the relevant statutes. *Id.* ¶ 21.

{8}     Petitioner asserts that San Miguel County is an incorporated county by virtue of both a special act, Chapter 142, Section 1 of New Mexico Laws of 1923, codified at NMSA 1978, Section 4-25-1 (1923), and a general act, Chapter 1, Section 3 of New Mexico Laws of 1876, codified at NMSA 1978, Section 4-38-1 (1876). Section 4-25-1 created the county presently named San Miguel County and established its geographic boundaries. *See* NMSA 1978, § 4-25-7 (1923) (changing the name of Jefferson County to San Miguel County in 1923). A county is a subdivision of the state. *El Dorado at Santa Fe, Inc. v. Bd. of Cnty. Comm'rs of Santa Fe Cnty.*, 1976-NMSC-029, ¶ 6, 89 N.M. 313, 551 P.2d 1360. It "possesses only such powers as are expressly granted to it by the Legislature, together with those necessarily implied to implement those express powers." *Id.* Nothing in Section 4-25-1 incorporated San Miguel County.

{9}     Section 4-38-1 states: "The powers of a county as a body politic and corporate shall be exercised by a board of county commissioners." Petitioner reads this statute

4

as establishing that a county in New Mexico is necessarily an incorporated county. But, a body "corporate" and an "incorporated" body are not the same for the purposes of defining a municipality under the Municipal Charter Act.

{10}     The Municipal Charter Act specifically defines a "municipality" to include an "incorporated . . . county" as well as incorporated cities, towns, or villages. Section 3-15-3. It specifies that a municipality may be incorporated under a "general act, special act or constitutional provision." *Id.* Significantly, when the Legislature passed the Municipal Charter Act, the Municipal Code contained provisions for the incorporation of municipalities both generally and under special act. NMSA 1978, §§ 3-2-1 to -9 (1965, as amended through 2013); NMSA 1978, §§ 3-3-1 to -4 (1965, as amended through 1985). Both such procedures required petitions and elections. Section 3-2-1, -5(E); Section 3-3-2, -3. In addition, at the time the Municipal Charter Act was enacted, the New Mexico Constitution provided for the incorporation of counties that are "less than one hundred forty-four square miles in area and ha[ve] a population of ten thousand or more." N.M. Const., art. X, § 5 (adopted in 1964). The procedure for the incorporation of a county requires an election on a draft charter. *Id.* Article X, Section 5 of the New Mexico Constitution grants a county incorporated under its provisions the same powers constitutionally and statutorily granted to municipalities. *Id.*

{11} Other than Article X, Section 5, there is no New Mexico constitutional or statutory provision that "incorporates" a county. The Home Rule Amendment permits a "municipality" to adopt a charter and to exercise certain legislative powers. N.M. Const. art. X, § 6(D). The Municipal Charter Act treats an "incorporated" county as a municipality. But, the constitutional and statutory backdrop at the time the Legislature enacted the Municipal Charter Act indicates that the legislative intent in defining "municipality" to include an "incorporated" county was to embrace within the Home Rule Amendment a county that incorporated under Article X, Section 5 and, thereby, acquired the same powers constitutionally and statutorily granted to municipalities.

{12} Section 4-38-1 states that a board of county commissioners has the authority to exercise the powers of the county "as a body politic and corporate." It was adopted, along with the establishment of organized counties as bodies corporate and politic in 1876. 1876 N.M. Laws, ch. 1, §§ 1, 3. These statutes were enacted because, at that time, there was "no general law for the incorporation of cities or towns, in which powers of local administration are usually vested[,]" and the Territorial Legislature did not want communities to "be without municipal government of some kind[.]" *Agua Pura Co. v. Mayor of Las Vegas*, 1900-NMSC-002, ¶ 13, 10 N.M. 6, 60 P. 208. These statutes recognize the counties as subdivisions of the territory, and later the

6

state, and, with that status as distinct entities, they may exercise powers necessary for their operation. In Section 4-38-1, the Territorial Legislature described a county's powers as "corporate," and, indeed, these powers resemble those of a corporation. *See* 3 *The Oxford English Dictionary* 955 (2d ed. 1991 reprint) (defining "corporate county" as "a city or town with its liberties, which has been constituted a county of itself, independent of the jurisdiction of the historical county or shire in which it is situated"); *The American Heritage Dictionary of the English Language* 41 (5th ed. 2011) (defining "corporate" in relevant part as "[o]f or relating to a corporative government or political system"). But neither Section 4-38-1 nor Section 4-25-1 is an incorporation provision or indicates an intent of the Legislature to incorporate counties. They do not provide any procedure for a county to incorporate or even to acquire any powers. We consider incorporation to be a specific process that requires specific legislative authority. *See* §§ 3-2-1 to -9; §§ 3-3-1 to -4 (specifying the process for a municipality to incorporate); *see also* NMSA 1978, §§ 53-12-1 to -4 (1967, as amended through 2003) (specifying the process to form a business corporation); NMSA 1978, §§ 53-8-30 to -33 (1975, as amended through 2003) (specifying the process to form a nonprofit corporation). Section 4-38-1 is not an indirect incorporation process.

{13} Although we have appellate cases that have discussed Section 4-38-1 or its predecessor statute, they do not affect our analysis of the Municipal Charter Act. For example, in *Board of Commissioners of Rio Arriba County v. Greacen*, 2000-NMSC-016, ¶ 5, 129 N.M. 177, 3 P.3d 672, in considering whether a county had the authority to enact local traffic ordinances and retain collected penalty assessments, our Supreme Court noted Section 4-38-1 and recognized that the county was organized and exercised powers "as a body politic and corporate." Nothing in *Greacen* addresses the incorporation of the county. Similarly, *State ex rel. Dow v. Graham*, 1928-NMSC-022, ¶ 6, 33 N.M. 504, 270 P. 897, involving a challenge to a legislative effort to abolish Catron County, merely recites that Catron County is a "body politic and corporate"; it does not consider any issue regarding incorporation.

{14} Our Supreme Court has also referred to counties as "municipal corporations." In *Agua Pura*, the issues involved a statute that limited actions questioning a franchise granted by a municipal corporation to six years from the grant of the franchise and deemed such franchises valid after the six-year period. 1900-NMSC-002, ¶ 14. The plaintiff had entered a contract with the board of county commissioners in 1880 that included supplying water within the county and to the "town and city of Las Vegas." *Id.* ¶¶ 10, 15. The Las Vegas city council sought to regulate the plaintiff's rates under an 1897 law that granted a city or town such

8

authority provided that existing contracts were not affected. *Id.* ¶ 9. The plaintiff sought an injunction against the city. *Id.* ¶ 4. The Court's holdings included that the contract was not subject to question and "valid in all respects" because the plaintiff did not bring suit within the required time period. *Id.* ¶ 15. The Court treated the county as a "municipal corporation." *Id.* ¶ 13.

{15} *Mountain States Telephone & Telegraph Co. v. Town of Belen*, 1952-NMSC-053, 56 N.M. 415, 244 P.2d 1112, involved a similar issue. The county commissioners of Valencia County had granted a franchise to the defendant to provide telephone service within the county in 1905. *Id.* ¶ 5. In 1949, the town of Belen, which was incorporated in 1918, sought to require the defendant to accept a franchise to operate within its corporate limits. *Id.* ¶¶ 1, 5. Our Supreme Court discussed its *Agua Pura* opinion at length, in particular, its conclusions that the county commissioners in *Agua Pura* had the power to grant a franchise to a public utility as a "municipal corporation" and that the six-year limitation period for challenging actions by a "municipal corporation" with respect to its grant of a franchise applied. *Mountain States*, 1952-NMSC-053, ¶¶ 8-10.

{16} In *Mountain States*, our Supreme Court described counties as "bodies corporate and politic" and stated their powers to be both "corporate" and "administrative." *Id.* ¶ 6 (internal quotation marks and citation omitted). The Court, however, noted that

the *Agua Pura* Court did not examine, but merely assumed, that the Territorial Legislature intended a county to be included as a "municipal corporation" allowed in the 1893 statute to grant a utility franchise. *Mountain States*, 1952-NMSC-053, ¶ 8. And, it questioned the correctness of its prior conclusion in *Agua Pura* that a county was such a municipal corporation, stating:

> While the term "municipal corporation" is sometimes used, in its broader meaning, to include such public bodies as the state and each of the governmental subdivisions of the state,—such as counties, parishes, townships, hundreds, etc.,—it ordinarily applies only to cities, villages, and towns which are organized as full-fledged public corporations.

> A county in a sense is a municipal corporation and sometimes is classed as such; but strictly speaking a county is distinguishable from, and is not, a municipal corporation.

*Mountain States*, 1952-NMSC-053, ¶ 8 (internal quotation marks and citations omitted). The Court further noted that if the *Agua Pura* Court had examined the meaning of the use of "municipal corporation" in the statute, "it might have reached a different conclusion." *Mountain States*, 1952-NMSC-053, ¶ 9. It nevertheless followed *Agua Pura* because it had been "stare decisis in this [s]tate for more than half a century." *Mountain States*, 1952-NMSC-053, ¶ 10.

{17} As we have discussed, the issue before us in this case is not whether San Miguel is a body corporate or a municipal corporation under Section 4-38-1, but rather whether it is an incorporated county under the Municipal Charter Act.

10

Although the Territorial Legislature designed counties to have corporate powers, and such powers have been used to broadly consider counties as "municipal corporations," the Municipal Charter Act is specific in its use of the term "incorporated county." Section 3-15-3. With this specificity, the Legislature did not intend to use the broader sense of corporate power discussed in *Mountain States*; it intended to include as "incorporated" counties only counties "organized as full-fledged corporations." *Mountain States*, 1952-NMSC-053, ¶ 8 (internal quotation marks and citation omitted).

{18} Any other interpretation of the Municipal Charter Act would not make sense. *See Baker v. Hedstrom*, 2012-NMCA-073, ¶ 12, 284 P.3d 400 ("It is fundamental that statutes will be construed so that their application will be neither absurd nor unreasonable." (internal quotation marks and citation omitted)). Article X, Section 5 of the New Mexico Constitution provides the procedure for a county to become incorporated, as well as the authority of an incorporated county, and restricts it to a county with less than one hundred forty-four square miles in area and a minimum population of ten thousand. Why would the Legislature pass such a constitutional amendment for voter approval to permit incorporation of such a limited class of counties of the state if it intended all counties of the state to be incorporated by their statutory creation?

11

{19} It is apparent that the Legislature took no such action. Its intent in passing the constitutional amendment to the voters was to limit incorporated counties to Los Alamos County. Petitioner does not dispute that Los Alamos County is the only county in the state that falls within the restrictions set forth in Article X, Section 5. This provision, adopted in 1964, was not the first to single out Los Alamos County from other counties. In 1955, the Legislature established the classification of H class counties, defined as "[a]ny county which covers an area of not more that 200 square miles." NMSA 1978, § 4-44-3 (1985). (The record indicates that Los Alamos County has a total area of 109 square miles and San Miguel County a total area of 4736 square miles.) In 1965, with the adoption of the Municipal Code, Los Alamos County was treated as a municipality. *See* NMSA 1978, § 3-1-2(G) (1993) (including "incorporated counties" and "H class counties" within the definition of "municipality"). The Municipal Code permitted municipalities to incorporate as a municipality. Sections 3-2-1 to -9. Los Alamos County did so in 1968. Thus, in 1971, when adopting the Municipal Charter Act and defining a "municipality" to include "incorporated counties," the Legislature was merely continuing its precedent distinguishing Los Alamos County from other counties.

{20} San Miguel County has no such history. It is not an "incorporated county" under the Municipal Charter Act. Absent that status, it does not fall within the

12

definition of "municipality" and is not entitled to a home rule charter under the Municipal Charter Act.

**HOME RULE AMENDMENT**

{21}     Petitioner makes the alternative argument that "San Miguel County is a municipality with authority to adopt a home rule charter under the Home Rule Amendment." He contends that the Home Rule Amendment is self-executing in that it provides that "[i]n the absence of law, the governing body of a municipality may appoint a charter commission upon its own initiative or shall appoint a charter commission upon the filing of a petition" of registered qualified electors. N.M. Const. art. X, § 6(C).

{22}     According to Petitioner, if the Municipal Charter Act does not apply, there is an "absence of law" that triggers the self-executing aspect of the Home Rule Amendment. Petitioner thus proposes that the meaning of "municipality" in the Home Rule Amendment, which is not specifically defined, can be defined independently of the Municipal Charter Act to include San Miguel County based on the plain meaning of "municipality." We do not agree with Petitioner's arguments.

{23}     First, we do not believe that it is appropriate to read the Home Rule Amendment independently of the Municipal Charter Act. The Home Rule Amendment specifically states that "registered qualified electors of a municipality

may adopt . . . a charter in the manner provided by law." N.M. Const. art. X, § 6(C). The Municipal Charter Act is the law enacted to implement the Home Rule Amendment. In this manner, the interpretation of the Home Rule Amendment is dependent on, not independent of, the Municipal Charter Act. There is no "absence of law."

{24}     Second, even if the "municipality" in the Home Rule Amendment could be given a different interpretation from "municipality" as defined in the Municipal Charter Act, the plain meaning of "municipality" would not include a county. Petitioner points to the definition of "municipality" in *Black's Law Dictionary* as embracing the plain meaning of the term. *Black's Law Dictionary* defines "municipality" and "municipal corporation" as:

>       A city, town, or other local political entity formed by charter from the
>       state and having the autonomous authority to administer the state's local
>       affairs; esp., a public corporation created for political purposes and
>       endowed with political powers to be exercised for the public good in the
>       administration of local civil government.

*Black's Law Dictionary* 1113 (9th ed. 2009). Although certain aspects of this definition may apply to a New Mexico county, the only county in the state that is either formed by charter or is a corporation is Los Alamos County.

{25}     Petitioner additionally argues that the plain meaning of "municipality" as used in the Home Rule Amendment includes counties because of the stated purpose of the

14

amendment "to provide for maximum local self-government[,]" Article X, Section 6(E) of the New Mexico Constitution, and because it would be irrational to exclude counties other than Los Alamos. However, the purpose of the Home Rule Amendment is to provide maximum local self-government for "municipalities." As we have discussed, except for Los Alamos, the counties of the state are not municipalities. While it may be an appropriate goal to have "maximum local self-government" at the county level, such intent was not encompassed within the Home Rule Amendment.

{26} Moreover, the difference between counties and municipalities is more than mere geography, as Petitioner suggests. "Historically, [a] county was solely the subdivision of the state, constituted to administer state power and authority." 1 Eugene McQuillin, *The Law of Municipal Corporations* § 1:27, at 32 (3d ed. 2010). "[C]ounties have been deliberately laid out, . . . [they] are artificial divisions created to share in state government." *Id.* § 1:25, at 26. Counties are formed by legislative act, *see* NMSA 1978, §§ 4-1 to -32 (1876, as amended through 1981) (establishing the boundaries of the counties in New Mexico), and are subdivisions of the state. 1 McQuillin § 1:27, at 32; *El Dorado at Santa Fe, Inc.*, 1976-NMSC-029, ¶ 9. Municipal corporations are "designed to promote the common interests of [their] inhabitants . . . [are] representative of [their] citizens and taxpayers . . . [and are]

15

established for the advantage of . . . the public at large." 1 McQuillin § 1:59, at 100. Municipalities are self-governing. *See* 1 McQuillin § 1:36, at 50 ("Generally, municipal corporations are self-governing[.]"). Unlike counties, they are formed by incorporation or charter. *See* § 3-1-2(G) ("'[M]unicipality' means any incorporated city, town or village, whether incorporated under general act, special act or special charter[.]"). Municipalities are governed by the Municipal Code, *see* NMSA 1978, §§ 3-1-1 to -66-11 (1965, as amended through 2014) (entitled, "Municipalities"), which is generally not applicable to counties. *See* NMSA 1978, §§ 4-1-1 to -62-10 (1876, as amended through 2013) (entitled, "Counties"). Although there may be certain overlap or parallel governing principles with respect to municipalities and counties, and our courts have at times referred to municipalities and counties in a common way, the two are not the same. *See, e.g.*, *City of Albuquerque v. New Mexico Pub. Regulation Comm'n*, 2003-NMSC-028, ¶ 3, 134 N.M. 472, 79 P.3d 297 (stating that a municipality "is an auxiliary of the state government" and a county "is but a political subdivision" of the state) (internal quotation marks and citation omitted), *see also* 1 McQuillin § 2:54, at 283, 286 ("[Municipal Corporations] and counties have been declared to be separate and distinct legal entities . . . . [T]he county is not, strictly speaking, a municipal corporation[.]"); *id.* at 283 ("Counties are often distinguished from municipal corporations in that counties are created without the

16

consent of the inhabitants, whereas the existence of municipal corporations ordinarily depends on the consent of the inhabitants."). We conclude that San Miguel County is not a municipality for the purpose of the Home Rule Amendment.

**EQUAL PROTECTION**

{27}     Petitioner argues that "[f]ailure to include San Miguel County in the term 'municipality' under the Home Rule Amendment and the Municipal Charter Act would infringe [Petitioner's] right to local self-government in a manner that violates the federal and state Equal Protection Clauses." U.S. Const. amend XIV, § 1; N.M. Const. art. II, § 18. In other words, Petitioner argues that an interpretation of the Home Rule Amendment and the Municipal Charter Act that fails to include all New Mexico counties within the definition of "municipality" violates federal and New Mexico equal protection guarantees because the residents of all counties except Los Alamos are denied the possibility of a vote on whether to adopt county-based home rule.

{28}     The right to equal protection under the law, both state and federal, affords a guarantee that the government will treat similarly-situated individuals in an equal manner. *Breen v. Carlsbad Mun. Schs.*, 2005-NMSC-028, ¶ 7, 138 N.M. 331, 120 P.3d 413. Under equal protection analysis, the threshold inquiry is whether the challenged legislation creates a class of similarly-situated persons who are treated

17

dissimilarly. *Id.* ¶ 10. Petitioner argues that, when read in combination, Sections 3-1-2(G), 3-15-3, 3-15-4, and Article X, § 5 of the New Mexico Constitution, allow citizens residing in incorporated cities, towns, villages, and Los Alamos County the potential for home rule but deny that potential to all others. For the purpose of this analysis, we assume without deciding that the combined effect of the statutes is to create a class of similarly-situated persons who are treated differently.

{29} The next step in an equal protection analysis is to determine the level of scrutiny that applies to the challenged legislation. *Breen*, 2005-NMSC-028, ¶ 11. Strict scrutiny, the standard of review least deferential to the Legislature, requires a party defending a statute to "prove that the legislation furthers a compelling state interest." *Griego*, 2014-NMSC-003, ¶ 39. Strict scrutiny applies when statutes treat a suspect class differently, or, generally, when statutes burden the exercise of fundamental rights. *Id.* Fundamental rights include voting and interstate travel, among others, and suspect classes include race and ancestry, among others. *Marrujo v. N.M. State Highway Transp. Dep't*, 1994-NMSC-116, ¶ 10, 118 N.M. 753, 887 P.2d 747. Rational basis review is most deferential to the legislation. Under rational basis review, the burden is on the party challenging the legislation in question to prove that the legislation is not rationally related to a legitimate governmental purpose. *Id.* Rational basis review applies to general social or economic legislation. *Breen*, 2005-

18

NMSC-028, ¶ 11. In between lies intermediate scrutiny. Intermediate scrutiny generally applies to statutes that affect a sensitive class of individuals, such as the mentally disabled. *Griego*, 2014-NMSC-003, ¶ 39. Intermediate scrutiny requires that the party defending the legislation prove a substantial relationship between the legislation and an important government interest. *Id.*

{30} Petitioner contends that we should apply strict scrutiny to the challenged legislation because the burdened right is fundamental. Petitioner argues that there is a fundamental right to local self-governance and, further, that the fundamental right is to the "utmost" local self-governance. Petitioner argues that this fundamental right is burdened by the inability to vote for home rule, stating that only home rule municipalities "have autonomy from state interference in matters of local concern, power to control their own affairs, and the utmost ability to take policymaking initiative." Petitioner asserts that it is an equal protection violation for New Mexico to "give the people of cities, towns, villages, and the county of Los Alamos the utmost local autonomy, control, and policymaking initiative while depriving the people of the other counties of the same local power."

{31} In support of his argument, Petitioner cites the Declaration of Independence para. 2 (U.S. 1776) ("Governments . . . deriv[e] their just powers from the consent of the governed."); the Ninth and Tenth Amendments of the United States Constitution

("The enumeration in the Constitution of certain rights shall not be construed to deny or disparage others retained by the people" and "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people," respectively); the Enabling Act for New Mexico of 1910 (stating that the New Mexico Constitution "shall not be repugnant to . . . the principles of the declaration of independence"); Article II, Section 2 of the New Mexico Constitution ("All political power is vested in and derived from the people: all government of right originates with the people, is founded upon their will and is instituted solely for their good."); and Article II, Section 3 of the New Mexico Constitution ("The people of the state have the sole and exclusive right to govern themselves as a free, sovereign and independent state."). These authorities seem to establish a broad right to political power and self-government, but, even assuming that there is a local dimension to that right, we do not recognize in these authorities a fundamental right to the utmost local control and autonomy as asserted by Petitioner.

{32}     Petitioner also cites a number of cases in support of his contention that the right burdened is fundamental and so demands strict scrutiny under equal protection analysis. These cases are unpersuasive in this context. Petitioner cites *Griffin v. County School Board of Prince Edward County*, noting that the United

20

States Supreme Court did not allow a county in Virginia to de-fund and keep closed its public schools for the ultimate purpose of maintaining segregated education. 377 U.S. 218, 222-23, 225 (1964). *Griffin* was grounded in federal equal protection analysis, holding that:

> A [s]tate, of course, has wide discretion in deciding whether laws shall operate statewide or shall operate only in certain counties, the legislature having in mind the needs and desires of each. . . . [But w]hatever nonracial grounds might support a [s]tate's allowing a county to abandon public schools, . . . grounds of race and opposition to desegregation do not qualify as constitutional.

*Id.* at 231 (internal quotation marks and citation omitted). This language suggests an equal protection analysis not based on a fundamental right, as Petitioner contends, but, instead, on race as a suspect class. Because Petitioner does not argue that there is an issue in this case that relates to race or any other suspect class, and because *Griffin* does not address fundamental rights, *Griffin* is not persuasive.

{33}     The other cases cited by Petitioner are similarly off-point. [1] Mere reference to cases in which a court applied strict scrutiny to an infringement of a fundamental right, such as the right to vote, that is unrelated to the right Petitioner would have us recognize, fails to persuade us that we should apply strict scrutiny in this case. Nor are we persuaded by cases cited by Petitioner that invalidate statutes or constitutional provisions as violations of equal protection without reference to a standard of review or reference to whether the right in question was fundamental.[2]

{34}     We conclude that rational basis review is appropriate in this case. There is no fundamental right that is violated by a statutory and constitutional scheme that allows the residents of Los Alamos County to engage in county-based home rule while residents of other counties cannot. As the United States Supreme Court noted in *Griffin*, 377 U.S. at 231, "there are reasons why one county ought not to be treated

---

[1] Petitioner cites to, for example, *Kramer v. Union Free School District No. 15*, 395 U.S. 621, 622, 628 (1969) (evaluating a statute that limited the right to vote in certain New York school districts under "exacting judicial scrutiny") and *Brown v. Entertainment Merchants Ass'n*, 131 S.Ct. 2729, 2738 (2011) (evaluating a statute that restricted the content of protected speech under strict scrutiny).

[2] For example, *Board of Education of the Village of Cimarron v. Maloney*, 1970-NMSC-146, ¶¶ 5, 8, 82 N.M. 167, 477 P.2d 605 (invalidating a provision of the New Mexico Constitution requiring ownership of real property as a prerequisite to voting on the creation of bond debt but without reference to a standard of scrutiny or fundamental rights) and *Nixon v. Condon*, 286 U.S. 73, 81, 89 (1932) (invalidating as a violation of the equal protection clause a law preventing non-whites from voting in primary elections in Texas).

like another," and the nature of the legislative function is to draw lines that "leave[] some out that might well have been included." *Trujillo v. City of Albuquerque*, 1998-NMSC-031, ¶ 28, 125 N.M. 721, 965 P.2d 305 (quoting *Vill. of Belle Terre v. Boraas*, 416 U.S. 1, 8 (1974)). Under rational basis scrutiny, the burden falls on Petitioner "to prove that the legislation is not rationally related to a legitimate governmental purpose." *See Griego*, 2014-NMSC-003, ¶ 39 (stating that under rational basis scrutiny the burden is on the party challenging the legislation to prove that statute is not rationally related to a legitimate governmental purpose). Petitioner has not constructed such an argument, instead relying solely on the argument that strict scrutiny is appropriate. We note that San Miguel County is more than forty times as large as Los Alamos County. It is a rational policy choice for the Legislature and the people of New Mexico to treat Los Alamos County differently from other counties on the basis of its size and its unique history and characteristics. Under rational basis review, the legislative scheme challenged by Petitioner does not violate equal protection guarantees under the United States or New Mexico Constitutions.

**CONCLUSION**

{36} For the foregoing reasons, we affirm the district court's denial of a petition for mandamus.

{37} **IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**RODERICK T. KENNEDY, Judge**