# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>October 6, 2016</u>

**NO. 34,282**

**STATE OF NEW MEXICO,**

　　　　Plaintiff-Appellee,

v.

**TERENCE GOODMAN,**

　　　　Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Charles W. Brown, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Elizabeth Ashton, Assistant Attorney General
Albuquerque, NM

for Appellee

The Law Office of Ryan J. Villa
Ryan J. Villa
Albuquerque, NM

for Appellant

**OPINION**

**KENNEDY, Judge.**

{1}     In this case we determine that a five- to fifteen-second delay in proceeding from a red light turned green does not constitute obstructing traffic as a matter of law in violation of a City of Albuquerque Ordinance entitled "Vehicles, Pedestrians Not to Obstruct Streets." Albuquerque, N.M., Rev. Ordinances ch. 8, art. I, § 8-2-1-33 (1974) (the Ordinance). Consequently, we also hold that the officer who stopped Defendant solely for a violation of the Ordinance based on that transitory delay was operating under an unreasonable mistake of law, and lacked reasonable suspicion for the stop. All evidence obtained as a result of the improper stop should have been suppressed. The district court having ruled otherwise, we reverse.

**I.     BACKGROUND**

{2}     While traveling southbound on Second Street in downtown Albuquerque at approximately two o'clock in the morning, Officer Mark Landavazo pulled up behind Defendant at a red light. The light was red when Officer Landavazo arrived, and there were no other cars at the intersection or on the adjoining streets. The street on which the two vehicles were traveling was three lanes wide: one northbound lane, one southbound lane, and one turning lane allowing traffic from either direction to turn left. When the light turned green, from five to fifteen seconds passed before Defendant began driving forward. As soon as Defendant started driving through the intersection, Officer Landavazo initiated his emergency lights. Defendant pulled over

immediately. The delay between the light turning green and Defendant's departure was the sole basis on which Officer Landavazo stopped Defendant. Defendant was ticketed for obstructing traffic. No other alleged traffic violation occurred. Officer Landavazo stated that he stopped Defendant because he believed that Defendant's delay impeded the flow of traffic, contrary to the Ordinance, which prohibits obstructing traffic.

{3}    Defendant filed a motion to suppress evidence obtained as a result of the stop. Defendant argued that Officer Landavazo did not have reasonable suspicion to stop Defendant.[1] The metropolitan court concluded that Officer Landavazo had reasonable suspicion to conduct his stop of Defendant and denied Defendant's motion. Defendant pled guilty, reserving his right to appeal the denial of his suppression motion. The district court affirmed in a memorandum opinion. Defendant now appeals the district court's decision to affirm the metropolitan court's denial of his motion to suppress.

**II.    DISCUSSION**

{4}    There is no legal touchstone, nor any evidentiary basis in this case for what constitutes an obstruction, or how long one has to be stationary in a street to be one. Arguments presented by Defendant in this appeal unconvincingly suggest that all three lanes of Second Street must be obstructed to be a violation under the definition of a "public way," while the State argues that there is no minimum delay in

---

[1]Defendant also argued in metropolitan court that Officer Landavazo's stop of Defendant was pretextual, but that issue is not before us in this appeal.

2

proceeding from a newly-green traffic light that is incapable of being investigated as a violation. We ascribe to neither position. The State cites to NMSA 1978, Section 66-7-105(A) (1978) to demonstrate that vehicular traffic facing a green light "may proceed straight through or turn right or left," but nowhere is there a time limit for doing so. We recognize that our Supreme Court requires that an ordinance must be specific enough to afford fair notice of what is prohibited to potential violators, *Harris Books, Inc. v. City of Santa Fe*, 1982-NMSC-078, ¶ 9, 98 N.M. 235, 647 P.2d 868, and that we have previously held that when an ordinance fails to create minimum guidelines for the reasonable police officer, charged with enforcement of the statute to a point that encourages subjective and ad hoc application, a statute cannot stand. *State v. Jacquez*, 2009-NMCA-124, ¶ 6, 147 N.M. 313, 222 P.3d 685. The State raises the Ordinance's ambiguity on appeal, but fails to demonstrate that the issue was raised below; we accordingly do not consider the argument. *See Cent. Sec. & Alarm Co. v. Mehler*, 1996-NMCA-060, ¶ 25, 121 N.M. 840, 918 P.2d 1340. In an attempt to follow as linear a path as possible, we first address whether reasonable suspicion existed to initiate the stop. After an analysis of the Ordinance, we conclude that Officer Landavazo had no reasonable suspicion to stop Defendant. In all, statutory analysis of the Ordinance drives this case.

{5} The denial of a motion to suppress presents a mixed question of fact and law. *State v. Almanzar*, 2014-NMSC-001, ¶ 9, 316 P.3d 183. Thus, the appellate court reviews the facts for substantial evidence, deferring to the lower court's findings

3

regarding the evidence presented. *State v. Leyva*, 2011-NMSC-009, ¶ 30, 149 N.M. 435, 250 P.3d 861. We review the application of law to the facts de novo. *Almanzar*, 2014-NMSC-001, ¶ 9. We are not bound by a lower court's ruling that is predicated on a mistake of law. *Boone v. State*, 1986-NMSC-100, ¶ 10, 105 N.M. 223, 731 P.2d 366.

{6}     The stop of a vehicle for the purpose of investigating a traffic violation is an investigative seizure and must be justified at its inception. *Leyva*, 2011-NMSC-009, ¶ 10. Justification consists of an officer having reasonable, articulable suspicion that a particular individual is breaking or has broken the law. *See State v. Jason L.*, 2000-NMSC-018, ¶ 20, 129 N.M. 119, 2 P.3d 856 (setting forth standard for reasonable suspicion); *see also State v. Duran*, 2005-NMSC-034, ¶ 23, 138 N.M. 414, 120 P.3d 836 (stating that New Mexico courts apply reasonable suspicion analysis for investigatory stops to traffic stops), *overruled on other grounds by Leyva*, 2011-NMSC-009. This includes reasonable suspicion that a traffic law has been violated. *State v. Prince*, 2004-NMCA-127, ¶ 9, 136 N.M. 521, 101 P.3d 332.

{7}     The Ordinance provides the following:

> It shall be unlawful for any person either to operate or to stand a vehicle on any public way in such a manner as to obstruct the free use of such public way, or to place himself, to place or direct another or to place or direct the placement of any material, object, or vehicle on any public way in such a manner as to obstruct the free use of such public way. The term "public way" shall include an intersection. This section shall not be interpreted to prohibit the lawful parking of vehicles, trailers, and the like.

Albuquerque, N.M., Rev. Ordinances § 8-2-1-33. We note that there is no

4

requirement of *intentionally* obstructing a public way, or any element of scienter at all in the Ordinance. Albuquerque, N.M., Rev. Ordinances § 8-2-1-33. A "public way" is defined as "[t]he entire width between the property lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel[.]" Albuquerque, N.M., Rev. Ordinances ch. 8, art. I, § 8-1-1-2(B) (1974, amended 2014). The "public way" includes the "unused right of way[.]" *Id.*

**A.     Officer Landavazo Had No Reasonable Suspicion That Defendant Obstructed Free Use of the Public Way Contrary to the Ordinance**

{8}     Defendant argues that the traffic stop was not supported by reasonable suspicion because Officer Landavazo made a mistake of law when he believed Defendant's actions constituted a violation of the Ordinance. Specifically, Defendant contends that the Ordinance, when read in conjunction with the definition of "public way," requires that the entire public way be utterly impassable. Thus, because portions of the unused right of way—the opposite northbound lane and southbound left-turn lane—were not both obstructed, Defendant argues that the Ordinance could not have been violated. The State, on the other hand, argues that Defendant's vehicle prohibited Officer Landavazo from proceeding forward through the intersection in the southbound lane, and thus, regardless of the temporal or spatial extent of the obstruction, the Ordinance was violated.

5

{9} Our determination of whether Officer Landavazo made a mistake of law in initiating a traffic stop, based on the belief that Defendant had committed a violation of the Ordinance, begins with an analysis of the Ordinance itself. *See State v. Scharff*, 2012-NMCA-087, ¶ 11, 284 P.3d 447 (determining whether a deputy made a mistake of law beginning with analysis of the section of the Motor Vehicle Code). Both the State and Defendant agree that Defendant did not immediately move forward when the traffic signal changed from red to green. *State v. Olivas*, 2011-NMCA-030, ¶ 8, 149 N.M. 498, 252 P.3d 722 (viewing the facts in the light most favorable to the decision below). It is also undisputed that Officer Landavazo initiated the stop immediately once Defendant began driving through the intersection and had no other reason for the stop than the delay in starting from a dead stop once the light turned green. Our task is to determine whether this delay is within the ambit of the type of conduct that the Ordinance is aimed at preventing. *See State v. Hall*, 2013-NMSC-001, ¶ 9, 294 P.3d 1235 (deciphering legislative intent by examining "the object the [L]egislature sought to accomplish and the wrong it sought to remedy" (internal quotation marks and citation omitted)).

{10} We interpret an ordinance in the same manner as we would a statute. *See Lantz v. Santa Fe Extraterritorial Zoning Auth.*, 2004-NMCA-090, ¶ 7, 136 N.M. 74, 94 P.3d 817; *see also Almanzar*, 2014-NMSC-001, ¶ 9 (applying a de novo standard of

6

review). We aim, above all, to give effect to the intent of the Legislature, or, in this case, the city council. *See Almanzar*, 2014-NMSC-001, ¶ 14; *see also* Albuquerque, N.M., Rev. Ordinances ch. 8, art. I, § 8-1-3-22 (1974, amended 1994) (acknowledging the city council's authority to pass portions of the traffic code). To do this, we look "to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Almanzar*, 2014-NMSC-001, ¶ 14 (internal quotation marks and citation omitted). Where the language of a statute is clear and unambiguous, this is the end of our inquiry. *Id.* However, courts must approach ambiguity with caution when applying the plain meaning rule: "Its beguiling simplicity may mask a host of reasons why a statute, apparently clear and unambiguous on its face, may for one reason or another give rise to legitimate (i.e., nonfrivolous) differences of opinion concerning the statute's meaning." *State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶ 23, 117 N.M. 346, 871 P.2d 1352. If a statute's language is unclear or ambiguous, we must conduct further statutory analysis by looking to the history, background, and overall structure of the statute. *See Almanzar*, 2014-NMSC-001, ¶ 15.

{11} Courts conducting statutory interpretation must also keep in mind that the plain meaning of a statute's language "does not trump common sense." *State v. Trujillo*, 2009-NMSC-012, ¶ 21, 146 N.M. 14, 206 P.2d 125. Thus, courts refrain from

employing a mechanical construction that renders an absurd or unreasonable result. *Almanzar*, 2014-NMSC-001, ¶ 15. When looking to the plain meaning of a statute's language, "it is necessary to think thoughts and not words." *State v. Strauch*, 2015-NMSC-009, ¶ 13, 345 P.3d 317. Doing so requires us to examine the object that the Legislature sought to accomplish or the wrongs it sought to remedy. *Hall*, 2013-NMSC-001, ¶ 9. We avoid adopting a construction that would lead to injustice or contradiction. *Strauch*, 2015-NMSC-009, ¶ 13.

{12}     The Ordinance prohibits obstructing free use of a public way. To "obstruct" is [t]o block or stop up (a road, passageway, etc.)" or to close off something. *Black's Law Dictionary* 1246 (10th ed. 2014). For the purposes of the Ordinance, a public way is the entire roadway, including all lanes of travel, as well as the intersection. *See* Albuquerque, N.M., Rev. Ordinances § 8-2-1-33; Albuquerque, N.M., Rev. Ordinances § 8-1-1-2. Defendant suggests we adopt an interpretation that would require a person to obstruct the entirety of the public right of way—including all usable lanes of traffic—to violate the Ordinance. Nothing in the Ordinance's language supports such an interpretation, though such an interpretation is possible under the plain language of the Ordinance. *See* Albuquerque, N.M., Rev. Ordinances § 8-2-1-33 (prohibiting the placing of a vehicle in a manner that "obstruct[s] the free use of [a] public way"). The functional repercussions of Defendant's interpretation,

however, lead to an absurd result. We can easily see that obstructing the only lane of traffic save those reserved for oncoming traffic or turns is possible. Without deciding the matter, the single lane of through traffic is, in our view of this case, capable of being obstructed by a single vehicle. *See May v. Baklini*, 1973-NMCA-043, ¶ 14, 85 N.M. 150, 509 P.2d 1345 (holding that obstruction can occur in one lane irrespective of the availability of others). Though *May* is distinguishable from this case in many ways—it was a civil case dealing with a prior version of the Ordinance, and presented a factual rather than legal issue—it is still relevant to our interpretation of the Ordinance. The Ordinance in 1973 contained language that prohibited obstructing the "free use" of a "public way." *May*, 1973-NMCA-043, ¶ 11. The crux of this case, though, is under what circumstances failing to move from a dead stop occasioned by a red light gives rise to a reasonable suspicion that a crime has been committed.

{13}     Defendant more persuasively suggests that the Ordinance implies a minimum time requirement through its use of the term "free use." He does not specify what precisely that requirement might be. We do not intend to forge a bright-line rule as to the extent of delay that is required to establish a violation of the Ordinance, but realize that some "obstructions" are more transitory than others. Officer Landavazo was not prevented from proceeding, but rather was simply delayed. Defendant was not moving along at a slow speed obstructing traffic in the lane as was arguable in

9

*May*, but legally stopped for a red light for which the officer had to stop as well. Officer Landavazo considered a period from five to fifteen seconds to be an illegal "obstruction," but providing no standard by which he might judge what would be a permissible delay. Accordingly, the standard by which the officer decided the violation was entirely ad hoc, subjective and arbitrary as a result. Labeling a mere delay such as this one an obstruction under the Ordinance makes it subject to numerous inconsistent interpretations. There is no evidence in the record that Officer Lanadavazo was at all inconvenienced or even forced to wait through another full light cycle before proceeding through the intersection. He was fully stopped because of the same legal compulsion that required Defendant to obey a red light. As it is, Defendant continued on his way seconds after the light change, and Officer Landavazo was permitted to do the same. When Defendant moved, he ceased being any sort of an obstruction—but was seized by the officer.

{14}     Our obligation as a reviewing court is to objectively judge the circumstances known to the officer to determine whether from the circumstances a reasonable person would believe that criminal activity occurred or was occurring. *State v. Hubble*, 2009-NMSC-014, ¶ 8, 146 N.M. 70, 206 P.3d 579. A delay of mere seconds after a mandatory stop, in our view, fails as a matter of law to "obstruct the free use" of the "public way," and therefore does not seem to be the harm that the Ordinance

is intended to prevent. Chapter 8, Article I of the City of Albuquerque Ordinances is aimed at promoting public safety and efficiency. *See* Albuquerque, N.M., Rev. Ordinances § 8-1-2-1 (acknowledging that an effective traffic control program must provide efficient and safe movement of traffic). Stopping at traffic lights and proceeding when they turn green is in concert with this goal. A fifteen-second delay, standing quite alone, without any indication as why it occurred, is no threat to public safety or free use of the city's roads.

{15} The State suggests that any extent of delay impedes progress and therefore constitutes an obstruction under the Ordinance. In analyzing whether Defendant's role as a de minimis source of delay is adequate to constitute an obstruction under the Ordinance, we are mindful of the practical implications of any such decision in this case. *See Reule Sun Corp. v. Valles*, 2010-NMSC-004, ¶ 15, 147 N.M. 512, 226 P.3d 611 (acknowledging that, in addition to a plain meaning examination, courts consider the practical implications of the statute). The State's position is sound only under a formalistic reading of the language in the Ordinance, and fails when viewed under the lens of practicality and applied in terms of everyday occurrences. In fact, there are countless situations in which a driver is delayed in entering an intersection after a light change but neither poses a threat to public safety nor significantly impairs efficient travel on the roadways. We cannot assume the city council intended that

11

everyone who stops at a stop light and is, for a myriad of legitimate reasons, unaware it became green, should be subject to punishment under the Ordinance. Such an outcome is both absurd and unjust, and we avoid such an interpretation. *See Almanzar*, 2014-NMSC-001, ¶ 15. We therefore conclude that the city council did not intend to penalize conduct such as Defendant's. The record supports no inference from Defendant's conduct to objectively support a reasonable suspicion that the violated the ordinance prohibiting obstructing traffic. No law required Defendant to immediately proceed on the change of the light, and nothing articulable indicates that five to fifteen seconds satisfies a requirement of obstructing traffic. In this instance, no circumstances known to a requirement of obstructing traffic. In this instance, no circumstances known to the officer for the period before or the fifteen seconds after the red light turned green would reasonably support an inference that the law was being violated.

**III.   CONCLUSION**

{16}    We conclude that the stop was initiated without reasonable suspicion that a crime was being committed by Defendant. We therefore reverse the district court's denial of Defendant's motion to suppress, vacate Defendant's conviction, and remand for further proceedings consistent with this opinion.

12

{17}     **IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Chief Judge**

_____
**MICHAEL D. BUSTAMANTE, Judge**

13