The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>February 9, 2022</u>

**No. A-1-CA-36501**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**DOMINIQUE MULLER,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF TORRANCE COUNTY**
**Matthew G. Reynolds, District Judge**

Hector H. Balderas, Attorney General
Benjamin Lammons, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
William O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**ATTREP, Judge.**

{1}     Defendant Dominque Muller was convicted of fourth-degree criminal sexual penetration of a minor and second-degree criminal sexual penetration, perpetrated during the commission of the felony of giving alcohol to a minor. This case calls on us to clarify the mens rea for the offense of giving alcohol to a minor. The statute establishing that offense provides that a person violates the Liquor Control Act[1] by giving alcoholic beverages to a minor "if he knows or has reason to know that he is violating the provisions of this section[.]" NMSA 1978, § 60-7B-1(A) (2004, amended 2013).[2] Defendant takes issue with the jury instruction given at trial—an instruction that premised guilt on Defendant's awareness of the victim's status as a minor. Defendant contends that the "knows or has reason to know" provision of Section 60-7B-1(A) refers instead to a defendant's awareness that one's conduct is prohibited by law. We reject Defendant's reading of the statute and conclude instead

---

[1]NMSA 1978, Chapter 60, Articles 3A, 5A, 6A, 6B, 6C, 6E, 7A, 7B, and 8A (1981, as amended through 2021).

[2] The 2004 version of Section 60-7B-1 applies in this case because Defendant's conduct occurred in 2011, before the statute was amended in 2013. *See State v. Figueroa*, 2020-NMCA-007, ¶ 8, 457 P.3d 983 ("[T]he law in effect at the time a criminal offense is committed is controlling[.]"). We observe, however, that the subsequent amendments to Section 60-7B-1 did not substantively affect the language of the provisions we construe in this opinion. *Compare* § 60-7B-1 (2004), *with* § 60-7B-1 (2013). All citations in this opinion to Section 60-7B-1 are to the 2004 version unless otherwise indicated.

that the "knows or has reason to know" provision of Section 60-7B-1(A) was correctly construed to premise guilt on Defendant's awareness that the victim was a minor.

{2}     We also address whether the introduction of certain evidence not objected to at trial was plain error. Defendant contends the evidence, as demonstrative of his character or his commission of uncharged misconduct, violated Rule 11-404 NMRA and meets the standard for reversal. We conclude the evidence's introduction, even if error, does not rise to the level of plain error.

{3}     There being no instructional or evidentiary error, we affirm Defendant's convictions.

**BACKGROUND**

{4}     For several months in 2011, Defendant lived with his girlfriend and her fifteen-year-old daughter, M.V., in Torrance County. According to M.V., following Defendant's advances, she and Defendant had sexual intercourse on multiple occasions during those months. M.V.'s mother eventually learned of this, and, shortly after, the couple split and Defendant moved out of the home.

{5}     About four years later, the State charged Defendant with three counts of criminal sexual penetration of a minor in the fourth degree, contrary to NMSA 1978, Section 30-9-11(G)(1) (2009), and one count of criminal sexual penetration (CSP) in the second degree, contrary to Section 30-9-11(E)(5). The latter CSP offense was

charged as a second-degree felony because the State alleged it was perpetrated during the commission of another felony—specifically, giving M.V. alcohol. *See* § 30-9-11(E)(5) ("Criminal sexual penetration in the second degree consists of all criminal sexual penetration perpetrated . . . in the commission of any other felony[.]"); § 60-7B-1(F) (deeming giving alcoholic beverages to a minor, contrary to Section 60-7B-1(A), a fourth-degree felony).

{6}     The case went to trial in January 2017. M.V. recounted four incidents in which she and Defendant had sexual intercourse. In the first, M.V.'s mother was away from home, and Defendant gave M.V. hard liquor before penetrating her on the couch. Another incident occurred some days later, in the bedroom Defendant shared with M.V.'s mother. The third was in Defendant's car, near a dog park in Albuquerque in Bernalillo County. And the fourth was on M.V.'s bed.

{7}     The State began questioning M.V. about a fifth sexual encounter that supposedly also took place in the bedroom Defendant shared with M.V.'s mother. M.V. responded, "I know there was [such an incident], but I don't remember." When asked whether anything would help to refresh her memory, M.V. said no, "I try to forget all this." The State then ended its questioning about the incident.

{8}     After the close of the State's evidence, the defense moved for a directed verdict on all four counts. The State clarified that the third incident, at the dog park, was not among the charges (presumably because it happened outside of Torrance

4

County, where all the incidents alleged in the charging document occurred). The district court granted Defendant's motion as to two of the counts—involving the fourth incident on M.V.'s bed and the fifth incident M.V. could not recall—because the testimony of the incidents "blurred" and was "not specific." The district court denied the motion as to the other two counts—involving the drinking incident and the second incident that occurred in the bedroom Defendant shared with M.V.'s mother. The jury returned a guilty verdict on each of those counts.

**DISCUSSION**

{9}     In challenging his convictions, Defendant raises two issues not brought to the district court's attention: (1) that the jury instruction on giving alcohol to a minor, the felony underlying his second-degree CSP conviction, was defective; and (2) that testimony about his character and uncharged conduct was admitted in violation of Rule 11-404(B). Neither claim leads us to conclude that reversal is warranted.

**I.     ALCOHOL-TO-A-MINOR JURY INSTRUCTION**

{10}    Defendant alleges the alcohol-to-a-minor jury instruction was defective because it omitted what he contends was the mens rea of the offense—i.e., that he knew giving alcohol to a minor was unlawful. Before addressing Defendant's contention, we first set forth the applicable standard of review and then lay out the relevant statutory text and the instruction given at trial.

**A.     Standard of Review**

5

{11}     Because Defendant did not object to the alcohol-to-a-minor jury instruction, we review this claim only for fundamental error. *See* Rule 5-608(D) NMRA (establishing that a claim of instructional error is preserved by objecting to the instruction before it is given); *State v. Sena*, 2020-NMSC-011, ¶ 34, 470 P.3d 227 (reviewing an unpreserved jury instruction argument for fundamental error). "The doctrine of fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice." *Sena*, 2020-NMSC-011, ¶ 34 (internal quotation marks and citation omitted). We employ a two-part test when reviewing jury instructions for fundamental error. First, "we seek to determine whether a reasonable juror would have been confused or misdirected by the jury instruction." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (internal quotation marks and citation omitted). "[J]uror confusion or misdirection may stem . . . from instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." *Id.* If this first inquiry reveals error, we move to the second part of the test "to determine whether the [d]efendant's conviction was the result of a plain miscarriage of justice." *State v. Barber*, 2004-NMSC-019, ¶ 19, 135 N.M. 621, 92 P.3d 633 (internal quotation marks and citation omitted).

{12}     The first step thus requires us to determine whether the instruction given accurately sets forth the law. *State v. Laney*, 2003-NMCA-144, ¶ 39, 134 N.M. 648,

6

81 P.3d 591. Because there is no uniform jury instruction associated with the alcohol-to-minors statute, Section 60-7B-1, "the district court was required to give an instruction that substantially follows [the statute's] language[.]" *State v. Luna*, 2018-NMCA-025, ¶ 21, 458 P.3d 457 (alteration, internal quotation marks, and citation omitted); *see also* Rule 5-608(A) (requiring the court to "instruct the jury upon all questions of law essential for a conviction of [the] crime"). Given the conflict between the district court's reading of Section 60-7B-1 and how Defendant now contends it should have been read, construing that section is necessary to resolve this matter. Our review is therefore de novo. *See State v. Farish*, 2021-NMSC-030, ¶ 11, 499 P.3d 622.

{13}     In construing a statute, we must ascertain and give effect to the intent of the Legislature. *See id.* To accomplish this, "[w]e first look to the plain meaning of the statutory language." *Id.* Where the statute is ambiguous, or "reasonably subject to multiple interpretations," we "proceed with further statutory analysis." *State v. Almanzar*, 2014-NMSC-001, ¶ 15, 316 P.3d 183. In doing so, we bear in mind that "any law is passed against the background of all the law in effect at the time[,]" including the common law, and that, "[i]f no aspect of the background of law is clearly abrogated, it is presumed to be consistent with, if not incorporated into, new legislation." *Sims v. Sims*, 1996-NMSC-078, ¶ 24, 122 N.M. 618, 930 P.2d 153. To ascertain legislative intent in the face of an ambiguous statute, we also may consider

7

"the history, background, and overall structure of the statute, as well as its function within a comprehensive legislative scheme." *Almanzar*, 2014-NMSC-001, ¶ 15 (internal quotation marks and citation omitted). We "read [the statute] as a whole, construing each section or part in connection with every other part or section so as to produce a harmonious whole[,]" *State v. Baca*, 2005-NMCA-001, ¶ 9, 136 N.M. 667, 104 P.3d 533 (internal quotation marks and citation omitted), read statutes in pari materia together to ascertain legislative intent, *State v. Ogden*, 1994-NMSC-029, ¶ 28, 118 N.M. 234, 880 P.2d 845, and construe the statute "so that no part of [it] is rendered surplusage or superfluous[,]" *State v. Javier M.*, 2001-NMSC-030, ¶ 32, 131 N.M. 1, 33 P.3d 1 (internal quotation marks and citation omitted). Lastly, when engaging in this analysis to ascertain legislative intent, "[w]e are distrustful of any formulaic approach"; rather, we "simply must select the rationale that most likely accomplishes the legislative purpose[.]" *State v. Anaya*, 1997-NMSC-010, ¶ 29, 123 N.M. 14, 933 P.2d 223.

**B.    The Governing Statute and the Jury Instruction Used**

{14}    As stated, the "other felony" the State relied on to support Defendant's second-degree CSP, Section 30-9-11(E)(5), charge was Section 60-7B-1(A), titled, "Selling or giving alcoholic beverages to minors; possession of alcoholic beverages by minors." *See* § 60-7B-1(F). As relevant to this case, Section 60-7B-1 provides:

> A.    It is a violation of the Liquor Control Act for a person, including a person licensed pursuant to the provisions of the Liquor

8

Control Act, or an employee, agent or lessee of that person, if he knows or has reason to know that he is violating the provisions of this section, to:

(1)   sell, serve or give alcoholic beverages to a minor or permit a minor to consume alcoholic beverages on the licensed premises;

(2)   buy alcoholic beverages for or procure the sale or service of alcoholic beverages to a minor;

(3)   deliver alcoholic beverages to a minor; or

(4)   aid or assist a minor to buy, procure or be served with alcoholic beverages.

Section 60-7B-1 goes on to exempt certain conduct from criminalization and to criminalize certain other conduct:

B.   It is not a violation of the Liquor Control Act, as provided in Subsection A or C of this section, when:

(1)   a parent, legal guardian or adult spouse of a minor serves alcoholic beverages to that minor on real property, other than licensed premises, under the control of the parent, legal guardian or adult spouse; or

(2)   alcoholic beverages are used in the practice of religious beliefs.

C.   It is a violation of the Liquor Control Act for a minor to buy, attempt to buy, receive, possess or permit himself to be served with alcoholic beverages.

D.   When a person other than a minor procures another person to sell, serve or deliver alcoholic beverages to a minor by actual or constructive misrepresentation of facts or concealment of facts calculated to cause the person selling, serving or delivering the alcoholic beverages to the minor to believe that the minor is legally entitled to be sold, served or delivered alcoholic beverages and actually

9

deceives that person by that misrepresentation or concealment, then the procurer and not the person deceived shall have violated the provisions of the Liquor Control Act.

{15} Apparently having interpreted "knows or has reason to know that he is violating the provisions of this section" (the "knowledge provision") as referring to Defendant's knowledge of M.V.'s minor status, the district court instructed the jury, in relevant part, as follows.

> 2a. Giving alcoholic beverages to a minor consists of:
>
> 1.) Defendant gave an alcoholic beverage to [M.V.][;]
>
> 2.) [M.V.] was a minor under 21 years of age[;]
>
> 3.) Defendant knew [M.V.] was a minor[.]

{16} The district court also gave the jury the general criminal intent instruction:

> In addition to the other elements of [CSP], the [S]tate must prove to your satisfaction beyond a reasonable doubt that [D]efendant acted intentionally when he committed the crime. A person acts intentionally when he purposely does an act which the law declares to be a crime, even though he may not know that his act is unlawful. Whether [D]efendant acted intentionally may be inferred from all of the surrounding circumstances, such as the manner in which he acts, the means used, his conduct and any statements made by him.

*See* UJI 14-141 NMRA.

## C. Mens Rea for Section 60-7B-1(A)

{17} Defendant contends guilt under Section 60-7B-1(A) must be premised on a finding that, when he gave alcohol to M.V., he knew he was violating the statute— that is, he did so with knowledge of the illegality of his conduct. Defendant argues

the district court's error in failing to so instruct the jury was compounded by giving the general intent instruction, which explicitly provides a defendant need not know the illegality of his conduct in order to be convicted. The State, for its part, seems to concede that Defendant's reading of Section 60-7B-1(A) is correct, or equivocates on the point, and in any case does not argue that the district court correctly instructed the jury on the mens rea for giving alcohol to a minor.

{18} We, however, are not bound by the State's concession; rather, we are duty-bound to independently ascertain the legislatively intended meaning of the statute at issue in this case. *See, e.g.*, *State v. Comitz*, 2019-NMSC-011, ¶ 25, 443 P.3d 1130 (observing that an appellate court is not bound by the state's concession and should independently assess a defendant's claims). Ultimately, based on the considerations discussed below, we reject Defendant's contention, because we conclude the Legislature intended "knows or has reason to know" to refer to the alcohol recipient's status as a minor, as conveyed by the instruction given, not to refer to the illegality of one's conduct.

**1.     Plain Meaning of Section 60-7B-1(A)'s Knowledge Provision**

{19} We begin our analysis with the language of the statute. Section 60-7B-1(A) provides, "It is a violation of the Liquor Control Act for a person . . . , if he knows or has reason to know that he is violating the provisions of this section, to" do any of the four prohibited acts listed. Unlike Defendant, we do not view Section 60-7B-

1(A) as having one plain meaning. Instead, the knowledge provision in Section 60-7B-1(A) is ambiguous, in that "it can be understood by reasonably well-informed persons in two or more different senses." *State v. Elmquist*, 1992-NMCA-119, ¶ 5, 114 N.M. 551, 844 P.2d 131.

{20}  The first sense is that which Defendant advances—where "know or has reason to know" modifies "violating" so that the knowledge provision imposes liability only when one violates the section with knowledge that he is violating it. The second is that which the district court adopted—where the knowledge provision refers to each of the elements described in Subsection (A) so that the knowledge provision imposes liability only when one knows or has reason to know of the facts constituting the proscribed conduct. For example, if one is alleged to have violated Section 60-7B-1(A)(1)—by giving an alcoholic beverage to a minor, as in this case—the person would be guilty of the offense if, in relevant part, the person "knew or had reason to know" the recipient was a minor.[3] In this sense, the statutory phrase "violating the

---

[3]Guilt also would be premised on the person's knowledge that the thing given the minor was an alcoholic beverage. We do not consider this element in this case because Defendant makes no argument that the jury instructions were deficient as to this element, nor is there any suggestion in the evidence that he was unaware that what he gave M.V. was hard liquor. *See State ex rel. Hum. Servs. Dep't v. Staples* (*In re Doe*), 1982-NMSC-099, ¶¶ 3-5, 98 N.M. 540, 650 P.2d 824 (declining to consider a constitutional argument because it was not raised by the appellants); *State v. Ocon*, 2021-NMCA-032, ¶ 12, 493 P.3d 448 ("[A]n appellate court may affirm a conviction notwithstanding the absence of an implicit jury finding on an omitted element if the jury . . . undoubtedly would have found the essential element if

provisions of this section" functions as "a shorthand designation for specific acts . . . which violate the [statute]." *United States v. Int'l Mins. & Chem. Corp.*, 402 U.S. 558, 562 (1971), *cited with approval in State v. Montoya*, 1977-NMCA-134, ¶ 14, 91 N.M. 262, 572 P.2d 1270; *cf. id.* at 559-60 (deeming a reasonable construction of the statutory phrase "knowingly violates any . . . regulation [for the safe transportation of corrosive liquids]" as the awareness that one is transporting corrosive liquids).[4] Thus, by inserting "knows or has reason to know that he is violating the provisions of this section" before the list of the four proscribed acts in

---

properly instructed."), *cert. denied*, 2021-NMCERT-___ (No. S-1-SC-38810, June 30, 2021).

[4]As far as we are aware, the precise statutory phrase at issue in this case— "knows or has reason to know that he is violating the provisions of this section"— has never been construed in New Mexico. There are New Mexico cases that have construed phrases similar to the knowledge provision to mean that one must have knowledge of the facts constituting the proscribed conduct. *See Territory v. Cortez*, 1909-NMSC-010, ¶ 5, 15 N.M. 92, 103 P. 264 (quoting out-of-state case construing statutory language, "who knowingly violates any of the provisions of the act," as requiring "knowledge of the facts essential to the crime" (quoting *Davis v. State*, 68 Ala. 58, 65 (1880))); *State v. Wilson*, 2010-NMCA-018, ¶¶ 6, 12, 147 N.M. 706, 228 P.3d 490 (construing statutory provision, "[a] person who knowingly violates Subsection (B) of this section within a drug-free school zone," as requiring "specific knowledge that the offense will occur within the drug-free school zone" (alteration, internal quotation marks, and citation omitted)). These cases, however, do not grapple with the precise question presented to us today—i.e., whether a provision like that in Section 60-7B-1(A) means one must be aware of the illegality of one's conduct or instead means one must simply be aware of the facts constituting the proscribed conduct. As cited herein, other courts, including the United States Supreme Court, have grappled with such questions and concluded that similar provisions do not require proof that one know the illegality of one's conduct; we find these courts' resolution of this issue persuasive.

13

Section 60-7B-1(A), the Legislature accomplished the task of requiring a "know or has reason to know" mens rea for each element, without repetitive and potentially confusing drafting.[5] *See Int'l Mins. & Chem. Corp.*, 402 U.S. at 562; *United States v. Wilson*, 133 F.3d 251, 261 (4th Cir. 1997) (construing similar mens rea provision as a shorthand drafting method); *United States v. Weitzenhoff*, 35 F.3d 1275, 1285 n.6 (9th Cir. 1993) (same); *State v. Rowland*, 933 A.2d 21, 23-24 (N.J. Super. Ct. App. Div. 2007) (construing "knowingly violates any of the provisions of this act" as premising guilt on knowledge of the proscribed conduct and not knowledge of the conduct's unlawfulness).

{21}    Notably, although the issue was not squarely before us, this Court has implicitly endorsed the second construction. *See ERICA, Inc. v. N.M. Regul. &*

---

[5]The only other use in the Liquor Control Act of the phrase "know or has reason to know" lends support to the idea that the knowledge provision in Section 60-7B-1(A) is in fact meant to be a shorthand, legislative drafting tool. NMSA 1978, § 60-7A-16 (1993, amended 2021) prohibits the sale of alcohol to intoxicated persons and provides that "[i]t is a violation of the Liquor Control Act for a person to sell or serve alcoholic beverages to . . . an intoxicated person if the person selling [or] serving . . . *knows or has reason to know* that he is selling [or] serving . . . alcoholic beverages [to] a person that is intoxicated." (Emphasis added.) Thus, where only one act is prohibited, as is the case in Section 60-7A-16 (1993), the Legislature simply used the "knows or has reason to know" phrase to directly modify that one act. The object of "knows or has reason to know," as expressed in Section 60-7A-16 (1993), is clearly the alcohol recipient's status as an intoxicated person. In contrast, where four separate acts are prohibited, as is the case in Section 60-7B-1(A), the Legislature attached the same mens rea requirement as in Section 60-7A-16 (1993), without redundant and potentially confusing drafting, by using the "knows or has reason to know" phrase to modify "violating the provisions of this section."

14

*Licensing Dep't*, 2008-NMCA-065, ¶ 2, 144 N.M. 132, 184 P.3d 444 ("Section 60-7B-1 . . . requires that the seller of . . . alcohol 'knows or has reason to know' that the purchaser is a minor."); *State v. Aragon*, No. A-1-CA-37809, mem. op. ¶ 3 (N.M. Ct. App. Feb. 19, 2020) (non-precedential) (considering "the scienter element for giving alcohol to a minor" established where the "[the d]efendant 'knew or had reason to know' [the person he gave alcohol to] was underage"). At a minimum, these cases underscore that the language of Section 60-7B-1(A) is ambiguous: it is capable of being reasonably understood to refer to a defendant's knowledge of the facts constituting the proscribed conduct, rather than a defendant's knowledge of the illegality of that conduct.[6]

---

[6]Upon further consideration of the text in Section 60-7B-1(A), Defendant's reading appears dubious. In arguing for this reading, Defendant contends "actual knowledge" that one is violating the law is required, seemingly ignoring the "or has reason to know" clause in Section 60-7B-1(A). But in giving effect to the Legislature's word, as we must, a nullity arises. *See Pirtle v. Legis. Council Comm. of N.M. Legislature*, 2021-NMSC-026, ¶ 19, 492 P.3d 586 (providing that courts must "give effect to all provisions of a statute so as to render no part inoperative or surplusage"). Under Defendant's reading, the "has reason to know" phrase would refer to constructive awareness that one's conduct violates the law and the question then becomes: Under what circumstance could a person lack such knowledge? The answer appears to be none, given the general principle that "[e]very person is presumed to know the law." *State v. Tower*, 2002-NMCA-109, ¶ 9, 133 N.M. 32, 559 P.3d 1264, *overruled on other grounds by State v. Archuleta*, 2015-NMCA-037, ¶ 1, 346 P.3d 390. Under Defendant's reading, then, the "has reason to know" phrase would play no real role in defining the offense or determining guilt. *See Baca*, 2005-NMCA-001, ¶ 18 ("A reviewing court does not construe one provision of a statute in a manner that would make other provisions null or superfluous." (internal quotation marks and citation omitted)).

{22}     Since Section 60-7B-1 is arguably subject to two interpretations, we "proceed with further statutory analysis," *see Almanzar*, 2014-NMSC-001, ¶ 15, examining the common law, Section 60-7B-1 and the Liquor Control Act as a whole, as well as the purpose of Section 60-7B-1, to ascertain which reading most likely effectuates the Legislature's intent. *See Anaya*, 1997-NMSC-010, ¶ 29. Finally, we address Defendant's argument based on the history of the Liquor Control Act.

**2.     The Common Law Principle That Ignorance of the Law Is No Defense**

{23}     We turn now to the common law to discern the more likely meaning of Section 60-7B-1(A). Although Defendant acknowledges "the general rule is that ignorance of the law is not a defense[,]" he contends that "knowledge of the law is precisely what the Legislature requires in this particular statute." We do not agree that the common law was abrogated by Section 60-7B-1(A), as Defendant suggests. We explain.

{24}     As a general matter, "[a] statute will be interpreted as supplanting the common law only if there is an explicit indication that the [L]egislature so intended." *Sims*, 1996-NMSC-078, ¶ 22. Our Supreme Court explained the rationale behind this rule of statutory construction.

> In relying upon the common law to resolve statutory omissions and ambiguities, we presume the [L]egislature was well informed about the existing common law before the statute was enacted and did not intend to enact a statute that conflicted with the common law. This rule of construction is a recognition that any law is passed against the

16

background of all the law in effect at the time. If no aspect of the background of law is clearly abrogated, it is presumed to be consistent with, if not incorporated into, new legislation.

*Id.* ¶ 24 (citation omitted); *see also Beals v. Ares*, 1919-NMSC-067, ¶¶ 30-34, 25 N.M. 459, 185 P. 780 (recognizing the adoption of the common law in New Mexico and its prevailing effect); *cf. Santillanes v. State*, 1993-NMSC-012, ¶ 11, 115 N.M. 215, 849 P.2d 358 (providing that the court-applied presumption that criminal intent is an essential element of each crime—unless it is clear from the statute that the Legislature intended to omit the mens rea element—is a rule of statutory construction in light of what the common law requires).

{25}    A deeply rooted common law principle in the American legal system is that "ignorance of the law or a mistake of law is no defense to criminal prosecution[.]" *Cheek v. United States*, 498 U.S. 192, 199 (1991) (citing sources from the 1800s and 1900s); *accord, e.g., State v. Carr*, 1981-NMCA-029, ¶ 24, 95 N.M. 755, 626 P.2d 292 ("Particularly in an area such as this, where potentially harmful substances [(narcotics)] are being regulated, the general rule of law applies: ignorance of the law is not a defense."), *overruled on other grounds by State v. Olguin*, 1994-NMCA-050, ¶ 36, 118 N.M. 91, 879 P.2d 92; *Montoya*, 1977-NMCA-134, ¶ 14 ("Th[e] general rule is that ignorance of the law is not a defense."); 1 Wayne R. LaFave, *Substantive Criminal Law* § 5.6(d) (3d ed. 2021) (noting that lack of awareness that one's criminal conduct is proscribed by the law is "ordinarily not a recognized

defense"). Thus, we will construe Section 60-7B-1(A) as upholding this well-established common law principle, absent "an explicit indication" the Legislature intended to supplant the rule. *See Sims*, 1996-NMSC-078, ¶ 22.

{26}     We see no such explicit indication here. Elsewhere in the Liquor Control Act, when the Legislature saw fit to provide a defense to criminal prosecution under Section 60-7B-1(A), it did so directly. For instance, Section 60-7B-1(B) exempts from liability a parent, legal guardian, or adult spouse of a minor serving alcoholic beverages to that minor in certain circumstances and exempts the use of alcoholic beverages in the practice of religious beliefs. Additionally, NMSA 1978, Section 60-7B-6 (1985, amended 2021) establishes an affirmative defense in a criminal prosecution of a licensee accused of furnishing alcohol to a minor if the licensee in good faith demanded and was shown an identity card as proof of age. Thus, had the Legislature actually intended to make one's ignorance of the law a defense to a Section 60-7B-1(A)-based charge, it could have made that intention clear by, for instance, adopting a defense to that effect in a separate measure, as it did in Section 60-7B-1(B) and Section 60-7B-6 (1985).

{27}     Given there are two plausible interpretations of Section 60-7B-1(A)'s knowledge provision—one that would abrogate the deeply rooted common law principle that ignorance of the law is no defense and one that would not—we find the precision necessary to override such long and well-established common law

18

principles lacking.[7] *See Sims*, 1996-NMSC-078, ¶ 22; *see also Int'l Mins. & Chem. Corp.*, 402 U.S. at 562 (viewing statutory provision "knowingly violates any such regulation" as a "shorthand designation" for the specific acts or omissions that violate the regulations and noting, when so viewed, that the statute "does not signal an exception to the rule that ignorance of the law is no excuse"); *Wilson*, 133 F.3d at 262 ("In light of these background rules of common law, we may conclude that mens rea requires not that a defendant know that his conduct was illegal, but only that he know the *facts* that make his conduct illegal, unless Congress clearly specifies otherwise." (internal quotation marks and citation omitted)).

**3.      Other Provisions in Section 60-7B-1**

{28}      Other provisions in Section 60-7B-1 likewise help us to ascertain the more likely meaning of Subsection (A). Of relevance to our consideration, Subsection (C) describes the same circumstances contemplated in Subsection (A) (the transfer of alcohol from an adult to a minor), but applies instead to the minor. *See* § 60-7B-1(C). Yet Subsection (C) includes no knowledge provision like that in Subsection (A). *See id.* Under the second reading, in which the knowledge provision merely requires that one know or have reason to know of the facts constituting the proscribed conduct, the absence makes sense: it can reasonably be presumed that

---

[7]We observe that Defendant has failed to direct us to any statute in New Mexico where the Legislature has abrogated this long-standing common law principle, and we are aware of none.

every minor knows his or her age. In contrast, under Defendant's reading, there would be no apparent reason for the distinction; we would be left to wonder why, where an adult transfers alcohol to a minor—and where both are ignorant of the law—the Legislature saw fit to vindicate the adult but not the minor. *See, e.g.*, *Farish*, 2021-NMSC-030, ¶ 11 (noting that, in construing a statutory provision, we (1) consider it in relation to the statute as a whole and (2) avoid construing it in a way that would lead to "injustice, absurdity or contradiction" (internal quotation marks and citation omitted)); *State v. Smith*, 2004-NMSC-032, ¶ 10, 136 N.M. 372, 98 P.3d 1022 ("A statutory subsection may not be considered in a vacuum, but must be considered in reference to the statute as a whole and in reference to statutes dealing with the same general subject matter." (alteration, internal quotation marks, and citation omitted)).

{29}     Subsection (D) of Section 60-7B-1 similarly supports the second reading. That subsection describes the circumstances contemplated in Subsection (A), but additionally contemplates that the transferor of alcohol is deceived by a third person into believing the alcohol recipient is of drinking age. *See* § 60-7B-1(D). It relieves the transferor, who essentially has no actual or constructive knowledge of the alcohol recipient's minor status, from liability. In so doing, it harmonizes with the second reading of Subsection (A) by negating the "knows or has reason to know" element of the offense. *See Farish*, 2021-NMSC-030, ¶ 11; *Smith*, 2004-NMSC-032, ¶ 10.

### 4. The Liquor Control Act as a Whole

{30} Next, we consider the Liquor Control Act as a whole, and, in particular, the broad criminalization of conduct in the Act, to determine the more likely meaning of Section 60-7B-1(A). The Act explicitly deems certain categories of conduct to be "a violation of the Liquor Control Act," as is the case in Section 60-7B-1(A). *See also, e.g.*, § 60-7A-17; § 60-7A-22; § 60-7B-13. Additionally, the Liquor Control Act has a catchall provision that criminalizes the violation of any provision of the Liquor Control Act, as well as any rule or regulation. *See* § 60-7A-25(A) ("A person who violates any provision of the Liquor Control Act or any rule or regulation promulgated by the department that is not declared by the Liquor Control Act to be a felony is guilty of a misdemeanor[.]"). Given the Liquor Control Act spans nine articles within Chapter 60 of the New Mexico statutes, Section 60-7A-25 has the effect of criminalizing countless types of conduct. *See* Chapter 60, Articles 3A, 5A, 6A, 6B, 6C, 6E, 7A, 7B, and 8A. In contrast, since the knowledge provision is found only in Section 60-7B-1(A), the mistake of law defense, inherent in Defendant's reading, is limited to Section 60-7B-1(A) alone.

{31} Thus, under Defendant's reading, the Legislature, for reasons not explained by Defendant, saw fit to provide a mistake of law defense to those persons who are charged with violating Section 60-7B-1(A) alone and declined such a defense for every other offense in the Liquor Control Act. Considering Section 60-7B-1(A)'s

21

function within the greater statutory scheme to criminalize just one type of conduct out of many, we can think of no plausible reason why the Legislature would choose to treat this offense in such a remarkable fashion. *See Farish*, 2021-NMSC-030, ¶ 11; *Almanzar*, 2014-NMSC-001, ¶ 15 ("When interpreting a statute, we are also informed by the . . . overall structure of the statute, as well as its function within a comprehensive legislative scheme." (internal quotation marks and citation omitted)).

**5.      Section 60-7B-1(A)'s Purpose**

{32}      Finally, as part of our statutory construction analysis, we consider the legislative purpose behind Section 60-7B-1. Generally speaking, the statute criminalizes furnishing alcohol to a minor and, in the case of a minor, receiving alcohol. *See* § 60-7B-1(A), (F) (penalizing the sale, service, and giving of alcohol to a minor as well as aiding a minor in being sold, procured, or served alcohol); § 60-7B-1(C), (G) (penalizing the actual or attempted purchase, the receipt, and the possession of alcohol by a minor). By criminalizing this conduct, the Legislature plainly disfavors underage drinking. *See Trujillo v. Trujillo*, 1986-NMCA-052, ¶ 11, 104 N.M. 379, 721 P.2d 1310 (recognizing that Section 60-7B-1 was "designed for the protection of minors as well as for the protection of members of the public"); *Walker v. Key*, 1984-NMCA-067, ¶ 22, 101 N.M. 631, 686 P.2d 973 (observing that, since "[y]outh and inexperience make misuse of alcohol especially likely," the

22

predecessor to Section 60-7B-1 "reflects a legislative finding that people under the age of twenty-one are not ready to handle the consumption of liquor").

{33}   The second reading would further that legislative aim. Under that reading, criminal liability would extend to those who enable such drinking, despite their lack of awareness that their conduct is against the law. In contrast, under Defendant's reading, a person's ignorance of Section 60-7B-1's import would shield the person from liability. Thus, Defendant's reading would have the seemingly perverse effect of rewarding ignorance of the law and enabling legislatively disfavored behavior. Both outcomes cast doubt on the plausibility of Defendant's reading. *See, e.g.*, *Ogden*, 1994-NMSC-029, ¶ 27 ("[T]he language of penal statutes should be given a reasonable or common sense construction consonant with the objects of the legislation, and the evils sought to be overcome should be given special attention."); *State v. Herrera*, 1974-NMSC-037, ¶ 6, 86 N.M. 224, 522 P.2d 76 ("We will not construe statutes . . . to defeat the intended object of the [L]egislature.").

## 6.   Defendant's Argument Regarding Legislative History

{34}   Finally, we examine Defendant's sole argument—beyond plain meaning—in support of his contention that Section 60-7B-1(A)'s knowledge provision required the State to prove that, when he gave alcohol to M.V., he knew he was violating the law. As best we can tell, Defendant contends that certain legislative history makes clear that the Legislature intended the knowledge provision to mean that a person

must know he is violating Section 60-7B-1(A) before being convicted under it. We do not agree.

{35}   In support, Defendant relies on the following history. The Legislature included the knowledge provision in Section 60-7B-1(A) for the first time in 1993. *Compare* § 60-7B-1(A) (1981), *with* § 60-7B-1(A) (1993). Also in the 1993 amendment, the Legislature limited the reach of Section 60-7B-1(A) to only those directly regulated by the Liquor Control Act—i.e., licensees and their employees, agents, or lessees—and excluded the general public. *Compare* § 60-7B-1(A) (1981), *with* § 60-7B-1(A) (1993). According to Defendant, the 1993 version of Section 60-7B-1(A) thus created a " 'boutique' crime, targeting [only] trained personnel engaged in the liquor trade." Also in 1993, the Legislature promulgated the Alcohol Server Education Act, NMSA 1978, §§ 60-6D-1 to -8 (1993, repealed 1999),[8] one purpose of which was to educate servers about state liquor laws. *See* § 60-6D-2(B)(2), (4); *see also* § 60-6D-4 (requiring proof that each server employed by a licensee or lessee completed alcohol server programs during the prior licensing year). Then, in 1998, when "untrained civilians" not availed of such training became subject to the prohibition against giving alcohol to minors, *see* § 60-7B-1(A) (1998),

---

[8]The Alcohol Server Education Act has since been repealed and replaced with the Alcohol Server Education Article of the Liquor Control Act, NMSA 1978, §§ 60-6E-1 to -12 (1999, as amended through 2021).

Defendant contends, it was reasonable for the Legislature to retain a mistake of law defense, but Defendant fails to explain this point.

{36} From this history, Defendant asserts it is evident that Section 60-7B-1(A)'s knowledge provision requires knowledge of the law because the provision was inserted at the same time the Alcohol Server Education Act was enacted. According to Defendant, the enactment of the Alcohol Server Education Act "ensured that persons engaged in the liquor trade . . . would possess the scienter necessary to commit a violation of Section 60-7B-1 should they give alcohol to a minor." In other words, by virtue of the mere existence of the Alcohol Server Education Act, *every* person covered by the 1993 version of Section 60-7B-1(A) *would necessarily* "know or have reason to know" that serving alcohol to a minor was against the law. But this circular logic begs the question: If the simple existence of the Alcohol Server Education Act meant that every person covered by Section 60-7B-1(A) would "know or have reason to know" of the law, then what logical reason would the Legislature have for requiring persons to know of that law before being convicted of it? Defendant does not say and we can think of none.

{37} In short, we reject Defendant's argument because accepting it would lead to an absurdity, *see Farish*, 2021-NMSC-030, ¶ 11, and render Defendant's construction of the knowledge provision surplusage, *see Javier M.*, 2001-NMSC-030, ¶ 32.

25

## D. There Was No Instructional Error

{38} All considered, we cannot conclude the Legislature intended that a defendant know or have reason to know of the illegality of his or her conduct when it adopted the knowledge provision in Section 60-7B-1(A). Instead, the construction of Section 60-7B-1(A) in which "knows or has reason to know" concerns the alcohol recipient's minor status represents the legislative intent. *See Anaya*, 1997-NMSC-010, ¶ 29 ("[We] simply must select the rationale that most likely accomplishes the legislative purpose[.]"); *see also Farish*, 2021-NMSC-030, ¶ 11 ("[O]ur guiding principle [in construing a statute] is that we should determine and effectuate the Legislature's intent when it enacted the statute." (internal quotation marks and citation omitted)). We thus conclude that, with the adoption of Section 60-7B-1(A)'s knowledge provision, the Legislature intended a defendant to have knowledge of the facts constituting the offense—as relevant here, the alcohol recipient's status as a minor. Accordingly, the jury instruction used in this case, which included that Defendant knew M.V. was a minor, correctly identified the mental state of the offense of giving alcohol to a minor. In sum, there was no instructional error,[9] let alone that which could be considered fundamental.

---

[9] Defendant makes an ancillary argument in support of his claim of instructional error, which is soundly defeated in light of our holding. In particular, Defendant claims that the failure to instruct on whether he knew he was violating Section 60-7B-1 was a "genuine issue," given that he reasonably could have believed he was subject to one of Section 60-7B-1(A)'s exceptions. *See, e.g.*, § 60-7B-1(B)(1)

26

## II. OTHER ACTS EVIDENCE

{39} The second issue in this appeal concerns trial testimony that Defendant contends was admitted in violation of Rule 11-404. Defendant seeks reversal of his convictions on this basis, notwithstanding his failure to object to the admission of this evidence at trial. We affirm because Defendant fails to consider the alleged errors in the context of the entire trial and thus fails to establish prejudice.

{40} As relevant here, the rule provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Rule 11-404(B)(1). Defendant challenges two categories of evidence. The first consists of testimony given by M.V.'s classmate and M.V.'s mother. M.V.'s classmate testified that one time, when Defendant was picking M.V. up from school, Defendant looked at M.V.'s buttocks with "a lustful look," and "a look of a conquest"—and that seeing this gave her the impression "something was going on." M.V.'s mother similarly testified about the way Defendant looked at M.V. She testified that she and

(relieving from Section 60-7B-1(A) liability the parent, legal guardian, or adult spouse of a minor who serves that minor alcohol on non-licensed premises, real property). Since this argument relies on the invalid premise that Defendant's reading of Section 60-7B-1(A) is correct, it is unavailing. To the extent this argument is distinct from Defendant's primary jury instruction argument, it is unclear and lacks development, and we do not consider it further. *See State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (noting that we will "not review unclear or undeveloped arguments [that] require us to guess at what [a] part[y's] arguments might be").

Defendant got into fights over what she described as Defendant looking at M.V. like "a partner, a relationship partner." M.V.'s mother contrasted how Defendant looked at M.V. with how her current husband did, saying that Defendant's gaze gave her "weird vibes." She also recalled an incident in which Defendant looked at M.V. "very intently" when M.V. was dancing in a way that was "maybe a little too provocative." Regarding the testimony of M.V's classmate and mother, Defendant argues that it "served no purpose other than to implicate [his] bad character, and to impute to him a lascivious disposition."

{41} The second category of evidence Defendant challenges concerns M.V.'s testimony about the dog-park incident—an act for which he apparently was not charged because it occurred in Bernalillo County and not Torrance County. Defendant argues that, in violation of Rule 11-404(B), evidence of the dog-park incident could only have been used to prove his character to show that he acted in accordance with that character on the occasions of the charged incidents.

{42} Defendant concedes that he did not object to the admission of the evidence he now challenges on appeal on the ground it violated Rule 11-404(B).[10] Accordingly,

---

[10]To be clear, Defendant did object to certain portions of M.V.'s classmate's and mother's testimony, but on grounds of speculation and relevancy and not because it violated Rule 11-404(B). The Rule 11-404(B) argument we now confront thus was not preserved. *See State v. Ortiz*, 2009-NMCA-092, ¶ 32, 146 N.M. 873, 215 P.3d 811 ("To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." (internal quotation marks and citation omitted)); *State v. Lucero*,

28

our review is for plain error only. *See State v. Montoya*, 2015-NMSC-010, ¶ 46, 345 P.3d 1056 ("[T]his Court may review evidentiary questions although not preserved if the admission of the evidence constitutes plain error." (internal quotation marks and citation omitted)).

{43} "The plain-error rule . . . applies only if the alleged error affected the substantial rights of the accused." *Id.* (internal quotation marks and citation omitted); *see also* Rule 11-103(E) NMRA ("A court may take notice of a plain error affecting a substantial right[.]"). Because it is an exception to the preservation requirement, we apply the rule sparingly and only when "we have grave doubts about the validity of the verdict, due to an error that infects the fairness or integrity of the judicial proceeding." *State v. Torres*, 2005-NMCA-070, ¶ 9, 137 N.M. 607, 113 P.3d 877 (internal quotation marks and citation omitted). Furthermore, a determination of whether reversal is warranted on the ground of plain error ultimately requires an examination of "the alleged errors in the context of the testimony as a whole." *Montoya*, 2015-NMSC-010, ¶ 46 (internal quotation marks and citation omitted). The burden is on the defendant asserting plain error to establish prejudice. *See State v. Summerall*, 1986-NMSC-080, ¶ 3, 105 N.M. 82, 728 P.2d 833 ("A defendant must show prejudice before a claim of plain error can stand."); *cf. State v. Astorga*, 2015-

---

1986-NMCA-085, ¶¶ 9-11, 104 N.M. 587, 725 P.2d 266 (holding the defendant's general hearsay objections pertaining to foundation did not preserve argument on appeal that testimony did not fall within a specific hearsay exception).

NMSC-007, ¶ 43, 343 P.3d 1245 (holding that "[the d]efendant bears the initial burden of demonstrating that he was prejudiced by the [preserved] error").

{44}    In this case, Defendant does little more than argue that the evidence in question was inadmissible under Rule 11-404(B) and that the district court should have excluded it notwithstanding the lack of objection from him. Even assuming the evidence is inadmissible, however, Defendant's briefing lacks any developed argument as to how he contends he was prejudiced by its admission. To the extent he does make such an argument, Defendant merely contends that "[o]nce irrelevant, inherently prejudicial information is given to the jury, there is no effective way to remove the taint." But as discussed above, a determination of whether an error rises to the level of plain error is case specific and requires an examination of the errors in the context of the trial as a whole. *Cf. State v. Tollardo*, 2012-NMSC-008, ¶¶ 43-44, 275 P.3d 110 (stressing the case-specific nature of harmless error review and identifying several factors for consideration).

{45}    Defendant neither examines the alleged errors in the context of the trial testimony as a whole nor cogently explains to us why he believes he was prejudiced to the extent that we should have grave doubts about the validity of the verdict. *Cf., e.g.*, *State v. Serna*, 2013-NMSC-033, ¶ 23, 305 P.3d 936 (discussing factors bearing on prejudice, including "the source of the error, the emphasis placed on the error, evidence of the defendant's guilt apart from the error, the importance of the

erroneously admitted evidence to the prosecution's case, and whether the erroneously admitted evidence was merely cumulative"). This is a fatal flaw, and we will not undertake such a case-specific analysis for him. *See, e.g.*, *State v. Flores*, 2015-NMCA-002, ¶ 17, 340 P.3d 622 ("Our Court has been clear that it is the responsibility of the parties to set forth their developed arguments, it is not the court's responsibility to presume what they may have intended."); *accord Astorga*, 2015-NMSC-007, ¶¶ 43, 52 (reiterating that it is the defendant's burden to establish prejudice when the error is preserved and holding no plain error where the defendant would not prevail under the less strenuous standard of harmless error). We therefore reject Defendant's argument that his convictions should be reversed on the ground evidence was admitted in violation of Rule 11-404(B) notwithstanding his failure to object.

**CONCLUSION**

{46}    For the foregoing reasons, we affirm Defendant's convictions.

{47}    **IT IS SO ORDERED.**

_____
**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

_____
**ZACHARY A. IVES, Judge**

_____
**JANE B. YOHALEM, Judge**